**John Thomas DUKE, Appellant,**

v.

**SAN JACINTO RIVER AUTHORITY,
et al., Appellees.**

No. 09–88–247–CV.

Court of Appeals of Texas,
Beaumont.

Aug. 31, 1989.

Rehearing Denied Sept. 27, 1989.

Judgment Reversed Jan. 10, 1990.

John W. Overton, Houston, for appellant.

John Wesley Raley, Houston, for appellees.

OPINION

BURGESS, Justice.

This is a summary judgment appeal involving an alleged wrongful job termination. John Thomas Duke filed suit against the San Jacinto River Authority, Courtney W. Curry and Ernest A. Crawford. Duke's first amended petition alleges the San Jacinto River Authority wrongfully terminated his employment, and Curry and Crawford, through threats and intimidation, effectuated that termination. This petition asked specifically for back pay as damages, along with reinstatement.

Three days before the hearing on the motion for summary judgment, Duke filed a second amended petition. There is nothing in the record to indicate leave was granted for this untimely filing. This second amended petition differs from the first in that it makes allegations that Curry and Crawford "made or caused or be make [sic] many other various and sundry threats and actions against Plaintiff." The petition concluded: "That because of Defendants' unlawful conduct towards Plaintiff and their unlawful termination of Plaintiff's employment...." Clearly the second amended petition was seeking damages other than for the alleged wrongful termination.

The motion for summary judgment was based on Duke's pleading failing to state a cause of action because he did not plead nor was there any proof of the only exception to the Texas employment-at-will doctrine established by *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985). This case, once again, points out the wisdom of the rule in *Massey v. Armco Steel Co.*, 652 S.W.2d 932 (Tex. 1983), and *Texas Department of Corrections v. Herring*, 513 S.W.2d 6 (Tex.1974), that is, the proper method of attacking the sufficiency of pleadings is by special exception. The protective features of special exception procedure should not be circumvented by a motion for summary judgment on the pleadings where a plaintiff's pleadings fail to state a cause of action. If the trial court granted leave to file the second amended petition, the summary judgment must be reversed because it did not dispose of all the causes of action. *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563 (Tex.1983). If the trial court did not grant leave, then the summary judgment must be reversed since Duke was deprived of the opportunity to amend his pleadings to state a cause of action. In any event, the result is the same. The summary judgment is reversed.

REVERSED.

BROOKSHIRE, Justice, dissenting.

This dissent is respectfully filed. This appeal before us involved directly the sole common-law exception to the employment-at-will doctrine in Texas law. Appellant, Duke, necessarily had to demonstrate three vital elements of his claim to remain in court. The three are: (1) a discharge or firing (2) for the sole reason (3) that he refused to perform an illegal or unlawful act. Hence, the absence of a material issue of fact as to any one of the three essential prongs of the plaintiff's case would totally justify the granting of a summary judgment.

The River Authority takes the position that, as a matter of law, there exists no genuine issue of a material fact as to each and every element. The River Authority says that there was no discharge and that there was no sole reason and that there was no refusal on his part to perform an illegal or unlawful act; nor was Duke requested to perform any such act. Duke began his work for the River Authority in about 1955. He was employed under an oral understanding with the Appellee, Crawford. Mr. Duke was to work and be paid on a monthly basis.

No understanding or agreement existed as to the length of time Mr. Duke was to remain employed with the Authority. Unquestionably, Duke could leave his employment at any time he so wished. Likewise, his work could be terminated by the Authority when it became dissatisfied with his work record. At one point, for a brief period in 1967, the Appellant was fired for some prevarications concerning damages done to a bulldozer owned by the River Authority.

The withdrawal of the Appellant from his employment culminated a number of years after he appeared before a grand jury. His grand jury appearance was the genesis of this dispute. The Appellees, Crawford and Curry, along with other personnel, were subpoenaed to testify before the Montgomery County Grand Jury. Mr. Duke did not discuss or converse about his testimony with the other parties to this appeal before or after his attendance and testimony before the grand jury. Mr. Duke's grand jury appearance was in 1971.

Duke admitted that neither Mr. Crawford nor Mr. Curry had heard from him anything about what he had said to the grand jury. The record of the grand jury proceedings, of course, is not before us. The results were that the grand jury found no evidence to justify indictments.

Some five years later, in 1976, Duke was being paid on a monthly salary basis. He missed quite a bit of work. He testified that he frequently took his father to a physician. Duke had missed work a number of days. The River Authority, feeling that it was unfair to pay Duke the same salary as employees who were working full time, caused Mr. Duke to be taken off the monthly, fixed, salary roll and put on an hourly wage basis. Curry explained this situation to Duke. Duke stated that Curry had told him, substantially, that if you (Duke) work you will get paid and if you do not work you will not be paid.

Apparently, Duke wanted some time to consider the matter and was given two weeks to decide about the new arrangement governing his compensation. In his deposition, Duke conceded that Curry did not fire him. The two week period transpired. Duke obtained his paycheck. Then he did not return to work. However, Duke did not advise the River Authority that he was not going to return to work. In fact, the authority personnel had no basis to believe that Duke would not be coming back to work. For a second time, Duke testified that he was not actually fired.

"Q Okay. So, neither one of them [Mr. Curry or Mr. Crawford] told you that you were fired after the date that you picked up your second check on June 15th, did they?

"A No."

Duke did not call the River Authority or any person in charge of the appropriate department to tell the River Authority that he was not coming back to work. A very short time afterwards, Duke took a similar job for another company. The income tax returns indicate clearly that he earned considerably more income after his unannounced leaving of his job at the River Authority.

About two years later, Duke brought this present lawsuit averring that he had been fired by the River Authority in 1976. His firing was alleged to have been the result of his subpoenaed testimony given to the grand jury in 1971. Nevertheless, between 1971 and 1976, he had been continuously employed by the River Authority. Hornbook law, for nearly a century—though trite and hackneyed—established the rule that Texas courts have uniformly upheld the rights of the employer to terminate an employee for any reason. Of course, if there was a specific employment contract to the contrary, or a collective bargaining agreement to the contrary, then the employment-at-will doctrine would not prevail. The authorities agree that the employment-at-will doctrine was firmly established in *East Line and R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (1888). *Id.* 10 S.W. at 102. *See and compare Maus v. National Living Centers, Inc.,* 633 S.W.2d 674 (Tex.App.—Austin 1982, writ ref'd n.r. e.); *Reynolds Manufacturing Co. v. Mendoza,* 644 S.W.2d 536 (Tex.App.—Corpus Christi 1982, no writ).

Our own Ninth Court decided *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403 (Tex.App.—Beaumont 1987, writ ref. n.r. e.). In *Benoit, supra,* we wrote, at page 406:

"At the threshold, we are met with the consistent and voluminous body of Texas law concerning wrongful discharges...."

However, we first considered the case of *Hauck v. Sabine Pilots, Inc.,* 672 S.W.2d 322 (Tex.App.—Beaumont 1984, writ granted). Our opinion was reviewed by the Supreme Court in *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985). There, the Supreme Court approved of a limited and narrow exception to the employment-at-will doctrine. The high court wrote:

"... That narrow exception covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act...." *Id* at page 735.

We are not aware of any appellate court extending the Sabine Pilot Service's excep-

tion beyond its own limited, restricted fact situation.

The facts of Sabine Pilot Service, Inc., are of paramount importance. Mr. Hauck was employed as a deckhand. His sworn testimony, at deposition, was that he was instructed that one of his duties to be performed each day was to pump out the bilges of the boat upon which he actually performed work. He also swore that he had observed a Coast Guard placard posted near or at the boat which admonished him, and others, that it was unlawful and illegal to pump the bilges into the water. He contacted the United States Coast Guard. He said that an officer of the Coast Guard confirmed that pumping bilges into the water was an illegal act. Thereafter, Hauck refused to perform this act and he testified that he was fired for that reason—the sole reason being his refusal to illegally pump bilge water out of the boat into the surrounding water. The Sabine Pilot Service case also pointed out that Hauck was actually discharged.

As I read the record, Mr. Duke was not actually discharged as an employee. I think the only fair reading of the record, and it is an undisputed fact, is that Mr. Duke quit or resigned or left the employment as a result of his own decision.

The second vital prong of a wrongful discharge case is that the sole reason for the employee's refusal to perform some act connected with his work is that the act was an illegal or unlawful one. *Sabine Pilot Service, Inc.*, 687 S.W.2d at page 735. The high court held, and reasoned, that it was the Appellant's duty to prove, by a preponderance of the evidence, that his discharge was for no reason other than his refusal to perform an actual, illegal act. Whether these precedents are an enlightened policy or not, or an enlightened rule of law; the results necessarily are that, if the employer demonstrates other reasons for the discharge and the Appellant fails to meet the "sole reason" test, then that employee, under even present Texas law, has no cause of action. The legislature is the branch of state government to address this vital public policy. The record before us clearly establishes that there were several reasons for the disagreements and disputes that arose in the present case.

The third essential part of the cause of action is that the employee, himself, refuses to perform an illegal act. This essential requirement and element necessitates that the employer instruct the employee to do something that was illegal and unlawful and, thereafter, the employee refused, which was the sole reason for his termination. There is no fact issue, in this record, that the authority ordered Duke to perform an illegal act; it did not. *See Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.1970). *Gibbs, supra*, stands for the proposition that a summary judgment for the River Authority, in this appealed case, is correct and proper if the record proves and establishes that, as a matter of law, there is no genuine issue of a material fact as to any one of the three essential elements or three vital prongs of Mr. Duke's cause of action. Thus, summary judgment should be granted if the record shows that only one of the three vital prongs of Mr. Duke's cause of action has been established conclusively, as a matter of law, adverse to Mr. Duke. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105 (Tex. 1984); *Otis Engineering Corp v. Clark*, 668 S.W.2d 307 (Tex.1983); *Spencer v. Anderson*, 669 S.W.2d 862 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

Mr. Duke was not fired; he was not discharged. He was given the free option of accepting an hourly wage rather than being retained on a monthly salary roll. This option was *not illegal*. He actually accepted one paycheck that was based on an hourly wage rate. Thereafter, he simply chose not to return to work. The River Authority thought that he was coming back to work, but Duke did not. There was nothing illegal or unlawful about the proffered new arrangement for Mr. Duke's compensation. Hence, Mr. Duke could not have been terminated for the sole and only reason that Duke refused to commit and perform an illegal act.

Frankly, Duke's belated claim that he was discharged in 1976 for the sole reason

that he had testified before a grand jury hearing in 1971 is glaringly without merit. Too much time had expired. Duke kept his grand jury testimony to himself. He never reported it to anyone at the River Authority. The River Authority had no way of knowing his testimony. In fact, the River Authority employed Duke continuously and consistently with regular raises and increases in his salary for five years following his grand jury appearance. There is simply no logical or deducible connection or relationship between Duke's wages by the hour. There is no causal link between Duke's totally unknown testimony and the River Authority's lawful actions five years later.

The majority opinion acknowledges that Duke is asking specifically for back pay as damages, along with reinstatement. Under this record, Curry and Crawford cannot award this relief. Duke was never the employee of Curry or Crawford. The court acknowledges that Duke's second amended petition was filed much too late—only three days before the hearing on the crucial motion. Then, surprisingly, the court notes that there is nothing in the record to indicate that leave was granted for this very late filing. It was the Appellant's duty to show that leave had been granted. In the untimely-filed, second amended petition, Duke makes certain allegations against Curry and Crawford. The trial court, I think, did not and should not have considered this late second amended petition. To do so, viscerates the summary judgment practice. Simply stated, the trial bench can never determine the record from which he is to adjudge and decide the motion for summary judgment if *TEX.R.CIV.P. 166a* and *166a(c)* are ignored. Mere pleadings, alone, do not constitute summary judgment proof.

In any event, there can be no justification for holding the River Authority within the remand. Even in his second amended petition, Duke still insists on reinstatement, back pay and consideration for reemployment, naming a single defendant, San Jacinto River Authority, for this relief. He does allege, in the vaguest of terms, in a most general, conclusionary way, that he "should recover punitive damages against Defendants in a sum not less that [sic] $200.00.00 [sic]".

The hearing, below, was conducted and participated in by the parties as a motion for summary judgment proceeding. The trial bench, in its order, clearly recited that the hearing was on the motion for summary judgment. Duke's brief treats the appeal as an appeal from an adverse summary judgment.

Duke's argument is whether summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of Plaintiff's/Appellee's cause of action, arguing: "This is the sole question on appeal". Duke makes no contention that his pleadings should have been tested by special exceptions. Duke does not argue that any special exception procedure was circumvented by the motion for summary judgment. The other opinion creates that contention and argument for Duke. This, the court cannot do. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979).

Under the record, I must dissent. *City of Houston v. Clear Creek Basin Authority, supra. Sabine Pilot Service, Inc. v. Hauck, supra.*