In re Moe NASR,

and

Moe Nasr, Appellant,

v.

Pedro Rubio and Debra Rubio, Appellees.

Nos. 09-00-033 CV, 09-00-034 CV.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 23, 2001.

Decided May 31, 2001.

John H. Bennett, Jr., Susan M. Fillion, Bennett, Dunn, Arnold, Ellwood & Neal, L.L.P., Houston, for appellant.

Daniel O. Goforth, Scott P. Callahan, Goforth, Lewis & Williams, L.L.P., Houston, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

WALKER, Chief Justice.

In these consolidated proceedings, Moe Nasr complains of the trial court's denial of his Motion to Stay Litigation and Plea in Abatement which invoked the Federal Arbitration Act (FAA) 9 U.S.C.A. §§ 1-16 (West 2000). Nasr's motion essentially requested the trial court to compel arbitration of claims made by Dr. Pedro Rubio and Debra Rubio against Nasr contained in a lawsuit filed by the Rubios. The Rubios' lawsuit was initiated on April 22, 1996, when the Rubios sought recourse against Nasr Corporation and Moe Nasr, individually, for improper design and construction of the Rubios' home, as well as for a variety of common-law tort actions. The Rubios later amended their petition to include a statutory claim as well.

■ A trial court's order denying arbitration, if based upon the Texas Arbitration Act TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-171.098 (Vernon 1997 & Supp. 2000), is subject to interlocutory appeal. *Id.* § 171.098(a). However, relief from a denial of arbitration sought under the FAA must be pursued by mandamus. *EZ Pawn*

*Corp. v. Mancias,* 934 S.W.2d 87, 91 (Tex. 1996). The contractual arbitration clause in the instant case does not specifically invoke either the Texas Arbitration Act or the FAA, and the trial court made no ruling on which Act applies.

■ The FAA governs a written arbitration clause in a contract "evidencing a transaction involving commerce...." 9 U.S.C.A. § 2. This provision extends to any transaction affecting commerce and is coextensive with the reach of the Commerce Clause of the United States Constitution. *Allied-Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 838–44, 130 L.Ed.2d 753, 763-69 (1995); *see In re L & L Kempwood Assocs.,* 9 S.W.3d 125, 127 (Tex.1999). A contract "evidenc[es] a transaction involving commerce" if it in fact turns out to involve interstate commerce. *Allied-Bruce,* 513 U.S. at 277-81, 115 S.Ct. at 841–43, 130 L.Ed.2d at 766-68.

■ Because federal law strongly favors arbitration, a presumption exists in favor of agreements to arbitrate under the FAA. *See Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996). However, a party seeking to compel arbitration must first establish its right to arbitrate under the FAA. *See Ikon Office Solutions, Inc. v. Eifert,* 2 S.W.3d 688, 696 (Tex.App.-Houston [14th Dist.] 1999, no pet.). If it does, and the opposing party does not defeat that right, the trial court is obliged to compel arbitration. *See EZ Pawn Corp.,* 934 S.W.2d at 91. In the instant case, the transaction evidenced by the construction contract is the construction of a single family residential dwelling for the Rubios by Nasr and his construction company. The record before us reflects that in response to discovery requests from the Rubios, Nasr provided a long list of subcontractors who participated in the design or construction of the Rubios' house.

Among the various businesses and individuals listed by Nasr is "Walmart." We have no problem with finding Nasr met his burden to show that the contract for the construction of the Rubios' house evidenced a "transaction involving commerce" as that phrase has been judicially defined and interpreted.[1] *See Allied-Bruce*, 513 U.S. at 281, 115 S.Ct. at 842–43, 130 L.Ed.2d at 767-68. We note that the FAA does not require a *substantial* effect on interstate commerce; rather, it requires only that commerce be involved or affected. *See Kempwood*, 9 S.W.3d at 127. Therefore, if some, but not all, aspects of a transaction affect interstate commerce, the FAA applies. *See e.g.*, *Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 720 (Tex.App.-Fort Worth 1997) (orig.proceeding) (purchase of mobile home manufactured and delivered in Texas affected interstate commerce where mobile home included components purchased or manufactured in other states and countries and where Florida manufacturer operated facilities in other states and was bonded by New York insurance company). Because the Rubios do not controvert Nasr's evidence regarding interstate commerce, nor even take issue that the FAA applies, we will address Nasr's petition for writ of mandamus, and dismiss his interlocutory appeal.

■ The Rubios contend that Nasr's mandamus request must be denied because Nasr has (1) waived arbitration, and (2) an adequate remedy at law. The Texas Supreme Court has rejected the "adequate remedy at law" response with regard to a trial court's denial of a motion to compel arbitration in *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266 (Tex.1992). The *Anglin* Court held that mandamus relief will issue "when the failure to do so would vitiate and render illusory the subject matter of an appeal." *Id.* at 272. The Court noted that absent mandamus relief, the relator would be deprived of the benefits of the arbitration clause it contracted for, and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated. *Id.* at 272–73. *See also Southland Corp. v. Keating*, 465 U.S. 1, 7–8, 104 S.Ct. 852, 79 L.Ed.2d 1, 10 (1984). We, too, reject the Rubios' "adequate remedy at law" contention.

The Rubios' waiver argument is a four-pronged attack, *viz:* (1) Nasr waived arbitration because notice was not timely given as a condition precedent to arbitration; (2) arbitration was waived because Nasr substantially invoked the judicial process; (3) Nasr engaged in acts constituting waiver, and (4) arbitration would prejudice the Rubios.

The specific provision in the arbitration paragraph of the construction contract provides that demand for arbitration "shall be made within a reasonable time after the dispute has arisen." The Rubios contend that Nasr's written demand for arbitration, filed with the American Arbitration Association [AAA] on November 4, 1999, was not timely because many disputes arose with Nasr as far back as May, 1994. The Rubios later filed their lawsuit on April 22, 1996. From the Rubios' perspective, Nasr's demand for arbitration was about five years too late.

---

1. While proof of the "Walmart" connection to interstate commerce seems somewhat tenuous, it is no more so than was the interstate commerce connection found to exist for FAA purposes in *In re Education Management Corporation, Inc.*, 14 S.W.3d 418, 422–25 (Tex. App.–Houston [14th Dist.] 2000, no pet.). As mentioned above, "Walmart" was among many subcontractors listed in Nasr's response to the Rubios' Tex. R. Civ. P. 194 "Request for Disclosure." Because the Rubios do not contest FAA applicability, nor contest the fact that "Walmart" was indeed involved in some aspect of the construction and/or design of their house, we find this sufficient to establish Nasr's right to arbitrate under the FAA.

■ At the outset, we note that because public policy favors resolving disputes through arbitration, there is a strong presumption against the waiver of contractual arbitration rights. *See In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998). Whether a party's conduct waives its arbitration rights is a question of law. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex.1999). We should resolve any doubts about waiver in favor of arbitration. *Id.*

■ In *In re Bruce Terminix*, the Court held that, absent an agreement to the contrary, "a party against whom a claim is asserted does not waive its right to arbitrate by failing to initiate arbitration of that claim." *Id.* at 706. In the instant case, it was never Nasr's burden to initiate the arbitration process against himself or assist the Rubios in doing so. *See Oakwood*, 987 S.W.2d at 574. The arbitration paragraph in the construction contract specifically provides that "[a]ll claims or disputes ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association...." [2] By agreeing to these rules, the parties placed the burden of initiating arbitration on the claimant, in this instance the Rubios. *Id.* As a matter of law, therefore, Nasr's failure to initiate arbitration in response to complaints made by the Rubios as far back as 1994 is not a waiver of his right to arbitration.

■ Neither do we find that Nasr substantially invoked the judicial process.

We rely on the discussion contained in *In re Bruce Terminix Co.*, 988 S.W.2d at 704 for this conclusion. Even had Nasr substantially invoked the judicial process, which we do not believe he did, his arbitration rights would not be waived unless the Rubios proved they had suffered prejudice as a result. *Id.*; *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex. 1995). Indeed, the Court in *Prudential Sec. Inc.*, explicitly stated that "[a] party does not waive a right to arbitration merely by delay; instead, the party urging waiver must establish that any delay resulted in prejudice." *Id.* at 898–99. The type of "prejudice" the courts seem to focus on is when a party uses the judicial process to gain access to information that would not have been discoverable in arbitration. *Id.* *See also Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 n. 3 (5th Cir.1991). The rule here is that "when only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice." *In re Bruce Terminix Co.*, 988 S.W.2d at 704.

■ In the instant case, the record before us indicates that the Rubios responded to one request for interrogatories, one request for admissions, one request for production, and that depositions of the parties were taken.[3] As the Supreme Court noted, "AAA rules allow arbitrators to arrange for 'production of relevant documents and other information.'" *Id.* at 704–05. The Rubios do not indicate how they

---

**2.** Rule R-6(a) of the AAA's Construction Industry Dispute Resolution Procedures states the procedure to be followed by the initiating party or "claimant."

**3.** The record does not contain any transcribed deposition testimony because, according to the Rubios, of the "sheer volume of these documents." The fact that depositions were

taken, absent proof of how this prejudiced the Rubios, will not be held to be a substantial invocation of the judicial process. *See General Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 928–30 (5th Cir.1970) (cited with approval in *EZ Pawn Corp.*, 934 S.W.2d at 90).

were prejudiced by the relatively limited discovery that took place prior to Nasr filing his petition for writ of mandamus. They contend that since their dispute with Nasr is "time sensitive," "[a]rbitration would only serve to delay the Rubio's [sic] ability to sell their home and move away from Bentwood." In essence, the Rubios contend that arbitration at this stage is a more lengthy process than litigation in a court of law. This position, however, flies in the face of cases that recognize that public policy of both the State of Texas and the federal government favor agreements to resolve legal disputes through voluntary settlement procedures; that both Texas and federal courts have noted their favorable disposition toward such agreements; and that efficiency and lower costs are frequently cited as the main benefits of arbitration. *Jack B. Anglin Co., Inc.,* 842 S.W.2d at 268 (and cases cited therein). Furthermore, as noted above, any delay in having their grievances against Nasr addressed is placed squarely at the feet of the Rubios who had the burden of invoking the arbitration clause upon first light of a dispute with the contractor, Nasr Corporation. *See Oakwood,* 987 S.W.2d at 574. We find, therefore, no substantial invocation of the judicial process by Nasr, and certainly no prejudice to the Rubios from what discovery has taken place.

 Finally, the Rubios' contention that Nasr has "engaged in acts constituting waiver" is merely a rehashing of their "substantially invoked the judicial process" complaint. We reject this as we did the previous one. As has been analyzed and ruled on by the cases cited above, Nasr has not engaged in any acts constituting a waiver of his right to arbitration. And as apparently an afterthought, the Rubios conclude by pointing out that Nasr cannot invoke the right to arbitration because Nasr himself contends he did not sign the construction contract in his individual capacity, but only as President of Nasr Corporation. The Rubios provide no authority in support of their contention. It has been held that a party may be estopped from avoiding arbitration of claims against a nonsignatory of the underlying contract if those claims and the claims against the signatory are based on the same operative facts and are inherently inseparable. *See Valero Energy Corp. v. Teco Pipeline Co.,* 2 S.W.3d 576, 592-93 (Tex.App.–Houston [14th Dist.] 1999, pet. filed). There can be no denying that the record before us indicates that the Rubios contend, *inter alia,* that Moe Nasr wore many hats prior to and during construction of their house. All of the Rubios' claims are essentially directed at Moe Nasr, whether individually or as representative of Nasr Corporation. As such, we believe the Rubios to be estopped from avoiding arbitration with Nasr.

We conclude that the trial court abused its discretion by denying Nasr's motion to stay litigation and plea in abatement in order to arbitrate the Rubios' various claims against him. A party erroneously denied the right to arbitrate under the FAA has no adequate remedy on appeal, and mandamus relief is appropriate. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d at 574-75. Accordingly, we conditionally grant the writ of mandamus. We are confident that the trial court will grant Nasr's motions to stay and abate the proceedings and compel arbitration. We instruct the clerk to issue the writ only if the trial court fails to do so.

WRIT CONDITIONALLY GRANTED; APPEAL DISMISSED.

BURGESS, Justice, dissenting.

I vigorously, yet respectfully, dissent.

## Mandamus v. Interlocutory Appeal

The majority holds this case invokes the Federal Arbitration Act and thus mandamus will lie in this case, yet acknowledges the contractual arbitration clause does not specifically invoke either the Texas Arbitration Act or the Federal Arbitration Act nor did the trial judge rule as to which act applied. Incredibly they "have no problem finding" this was a "transaction involving commerce" because Walmart is among the subcontractors listed in response to discovery requests.[4] Mr. Nasr *never* raised this issue before the trial court nor did he rely upon this in his Petition for Mandamus. For this court to *sua sponte* utilize this to overrule a trial court runs contra to *San Jacinto River Authority v. Duke*, 783 S.W.2d 209, 210 (Tex.1990).[5] *See also Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). Since the majority holds mandamus applies, they must necessarily hold the trial court abused its discretion. How can a trial judge abuse his discretion when it was never pointed out that the Federal Arbitration Act applied because Wal Mart was a subcontractor? The burden is on the party seeking to compel arbitration to establish its right to arbitrate under the Federal Arbitration Act. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex. 1996); *Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 696 (Tex.App.–Houston [14th Dist.] 1999). At the hearing on the motion to stay, Mr. Nasr provided no evidence other than the original contract. He did not meet his burden before the trial court. Therefore, mandamus does not lie and the interlocutory appeal should be the vehicle for consideration of this case.

4. In the words of comedian Steve Martin ... EXCUUUUUSE ME!!!!

5. This writer is profoundly familiar with the holding, having written the original case,

## Waiver Of Arbitration Rights

The underlying lawsuit was initiated on April 22, 1996, when the Rubios sought recourse against Nasr Corporation and Moe Nasr, Individually, for improper design and construction of the Rubios' home, as well as for a variety of common-law tort actions. The Rubios later amended their petition to include a statutory claim as well.

The Rubios contend Mr. Nasr waived his right to seek arbitration because: 1) notice was not timely given as a condition precedent to arbitration; 2) Nasr substantially invoked the judicial process; 3) Nasr engaged in acts constituting waiver; and 4) arbitration would prejudice the Rubios.

I need only address one of these contentions, i.e., that Mr. Nasr substantially invoked the judicial process. To substantially invoke the judicial process, a party must make a specific and deliberate act after suit has been filed that is inconsistent with its right to arbitrate, such as engaging in extensive discovery or requesting a jury trial. *EZ Pawn Corp.*, 934 S.W.2d at 89; *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 522 (Tex.App.-Austin 1998, no writ).

This case had been on file for three years and nine months prior to Mr. Nasr's filing of his petition for writ of mandamus. During the life of the case, Mr. Nasr engaged in extensive discovery. He propounded Interrogatories, Requests for Production, Requests for Admissions on Plaintiffs and Requests for Disclosures on Plaintiffs. Mr. Nasr responded to Plaintiffs' Requests for Production, responded to Plaintiffs' Requests for Disclosure and answered Plaintiffs' Interrogatories. The

*Duke v. San Jacinto River Authority*, 778 S.W.2d 123 (Tex.App.-Beaumont 1989), *rev'd*, 783 S.W.2d 209 (Tex.1990).

parties have exchanged extensive correspondence regarding the case status, hearings, depositions, and Rule 11 agreements. The Rubios propounded extensive discovery on Mr. Nasr during this litigation and Mr. Nasr has responded and supplemented accordingly.

Mr. Nasr sought two trial continuances. Mr. Nasr requested a jury trial and paid the appropriate jury fee. Mr. Nasr filed his pre-trial statement designating fact and expert witnesses, proposed jury charge, and proposed exhibit list. Mr. Nasr filed a Motion to Compel Discovery. He also filed a motion for entry and inspection of the Plaintiffs' premises. There have been three trial settings in this case. The first, November 29, 1999, was reset due to Mr. Nasr's First Motion for Continuance. The second, January 24, 2000, (an agreed, preferential setting) was reset due to Mr. Nasr's Second Motion for Continuance. The third was for March 6, 2000, which was avoided by filing the present action.

I am aware that *Dyer* and *EZ Pawn* further require an "independent showing of prejudice to the nonmovant." *Dyer,* 969 S.W.2d at 522 (citing *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex. 1995)). However, in *Star Hill Co. v. Johnson Controls, Inc.,* 673 S.W.2d 282, 284 (Tex.App.-Beaumont 1984, no writ), this Court determined: "The length of time from the filing of the law suit until the demand for arbitration plus the appellant's own actions clearly authorize the trial court to find appellant intentionally and impliedly waived its right to demand arbitration as a matter of law. *Spain v. Houston Oilers, Inc.,* [593 S.W.2d 746, 748 (Tex. Civ.App.–Houston [14th Dist.] 1979, no writ) ]; 7 Tex. Jur. 3d Arbitration and

Award section 18 (1980)." In *Star Hill Co.,* the time lapse between the filing of the initial lawsuit and Star Hill's filing of its motion for stay pending arbitration was only one year and seven months. 673 S.W.2d at 282–83. The operative time lapse in the instant case was three years and six months.

In *Spain,* the Houston Court held: "[T]he three year, eight month lapse between the date appellee filed its motion to dismiss and compel arbitration is an unreasonable delay and prejudicial per se." *Id.* at 748. For us in the instant case to now say that appellees have failed to make an independent showing of prejudice verges on the ludicrous. The record before us, standing alone, speaks of prejudice.

It is abundantly clear from the record that Mr. Nasr's desire to seek arbitration was nothing more than a long delayed afterthought.[6] The record reveals that the dispute arose on January 24, 1996, when Mr. Nasr's legal counsel responded to a letter from the Rubios' counsel dated January 17, 1996. Mr. Nasr cannot maintain that his involvement in the litigation process was merely defensive, for indeed he aggressively pursued the process with specific deliberation.

In summary I would hold that mandamus does not lie, but if so, the trial court did not abuse its discretion in denying appellants' motions. Therefore I would deny the writ. Furthermore, I would hold the trial court did not err at all and would affirm the order of the trial court.

---

6. I am mindful of our Texas Supreme Court's opinion, *In re Bruce Terminix Company,* 988 S.W.2d 702, 704 (Tex.1998). In *Terminix,* the Court determined that *"Terminix*'s use of the judicial process was limited. . . ." In this case, I find no such limitation on Mr. Nasr's pursuit of the process.