Palm Harbor Draft 1 30-03







Opinion issued December 31, 2003

















In The
Court of Appeals
For The
First District of Texas




No. 01-02-00370-CV




IN RE PALM HARBOR HOMES, INC. AND PALM HARBOR HOMES I,
L.P. D/B/A PALM HARBOR VILLAGE, Relators




Original Proceeding on Petition for Writ of Mandamus




O P I N I O N

          This is an original proceeding for a writ of mandamus. Relators Palm
Harbor Homes, Inc. (“Palm Harbor Homes”) and Palm Harbor Homes 1, L.P. 
d/b/a Palm Harbor Village (“Palm Harbor Village”), initiated this original action in
April 2002, seeking a writ of mandamus to compel the Hon. J. Ray Gayle, then
Judge of the 239th District Court in Brazoria County, to rescind an order dated
December 4, 2001, denying Relators’ Plea in Abatement and Motion to Compel
Arbitration, and to compel the Real Parties in Interest Raymond Ripple and wife
Crystal Parnell Ripple (the “Ripples”) to submit the dispute to binding arbitration
before the American Arbitration Association. On February 6, 2003, after the
retirement of J. Ray Gayle as Judge of the 239th District Court, this Court abated
the proceeding to allow Relators to resubmit their motion to the Hon. Sherry
Sebesta, who had succeeded Judge Gayle as Judge of the 239th District Court of
Brazoria County. On March 6, 2003, at a hearing before Judge Sebesta, Relators
presented their Second Motion to Compel Arbitration, which the court denied by
order dated March 29, 2003. On April 1, 2003, Relators filed an amended petition
in this Court on April 1, 2003, seeking a writ of mandamus to compel Judge
Sebesta to rescind her order of March 28, 2003 and to compel arbitration. 
The Principal Action
          In the underlying action, the Ripples seek judgment for monetary damages
and other relief, alleging breach of contract, breach of warranty, and statutory
violations of the Residential Construction Liability Act in connection with a retail
sales transaction in which the Ripples had purchased a mobile home from Palm
Harbor Village (the “Retailer”), which had been manufactured by Palm Harbor
Homes (the “Manufacturer”). In the course of that sales transaction, the Ripples
and the Retailer signed several documents, including a document entitled
“Arbitration Provision for Texas” (hereinafter Palm Harbor No. 1”), which is dated
October 1, 1998. Thereafter, the Ripples continued to meet with the Retailer to
discuss the progress of the construction work and the purchase of the manufactured
home. After the Manufacturer completed construction of the home in November
1998, the Ripples signed a second arbitration agreement (“Palm Harbor No. 2”),
which is dated December 17, 1998. The terms of both documents (together
referred to as the “Palm Harbor Agreement”) will be outlined below.
          In January 1999, the mobile home was constructed on the Ripples’ property. 
After a series of complaints to the Retailer regarding the quality and construction
of the home, the Ripples in November 2000 submitted claims to both the Retailer
and the Manufacturer based on the provisions of the Residential Construction
Liability Act. In May 2001, the Ripples initiated the underlying action, alleging
damages for breaches of warranty and contract, including statutory liability under
the Residential Construction Liability Act. 
The Parties’ Contentions
          Relators contend the face of the record demonstrates a clear abuse of
discretion by the trial court in denying their motion to compel arbitration. In
essence, they argue that the record conclusively establishes the existence of a valid
agreement to arbitrate under the Federal Arbitration Act, and that the Ripples did
not offer proof in support of their affirmative defenses of lack of consideration and
unconscionability.
          The Ripples contend that: (1) the Relators failed to meet their threshold
burden of establishing the existence of a valid arbitration agreement, and (2) the
court did not abuse its discretion, under the circumstances surrounding the
transaction, in ruling that the provision in the Palm Harbor Agreement, which
purports to give the Manufacturer an absolute and unconditional right to
unilaterally “opt-out” of the agreement to arbitrate, renders the entire agreement
unconscionable and unenforceable.
          Standard of Review
          Mandamus is an extraordinary remedy that will issue only to correct a clear
abuse of discretion or the violation of a legal duty when there is no adequate
remedy at law. In re Masonite Corp., 997 S.W.2d 194, 197 (Tex. 1999). In
determining whether there has been a clear abuse of discretion justifying
mandamus relief, the reviewing court must consider whether the trial court's ruling
was one compelled by the facts and circumstances or was arbitrary, unreasonable,
or reached without reference to any guiding rules or principles. Johnson v. Fourth
Court of Appeals, 700 S.W.2d 917, 918 (Tex. 1985); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).
          A trial court’s failure to apply the Federal Arbitration Act to the facts of the
dispute constitutes an abuse of discretion for which there is no adequate remedy at
law. Jack V. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992). Thus,
the erroneous denial of a party’s motion to compel arbitration under that Act leaves
the movant with no adequate remedy at law, and under such circumstances the
movant is entitled to a writ of mandamus. In re First Merit Bank N.A., 52 S.W.3d
749, 753 (Tex. 2001); see also Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 
1992); In re Conseco Fin. Servicing Corp., 19 S.W.3d 562, 568 (Tex. App.—Waco
2000, orig. proceeding); In re Monsanto Co., 998 S.W.2d 917, 921-22 (Tex.
App.—Waco 1999, orig. proceeding).
          Applying these standards to the record in this case, we must seek to
determine whether the trial court=s ruling constitutes a clear abuse of discretion, i.e. 
whether the court could have rendered only one proper decision on the facts and
applicable law and failed to reach that decision. Southwest Tex. Pathology Assoc. 
v. Roosth, 27 S.W.3d 204, 207 (Tex. App.—San Antonio 2000, no pet.); Hardin
Constr. Group v. Strictly Painting, 945 S.W.2d 308, 312 (Tex. App.—San Antonio
1997, no writ). 
          Relators’ Burden of Proof
          A party seeking a writ of mandamus to compel arbitration under the Federal
Arbitration Act must first establish the existence of a valid agreement to arbitrate
and show that the claims in dispute are within the scope of the agreement. In re
First Merit Bank, 52 S.W.3d at 753. Once the movant proves the existence of a
valid agreement to arbitrate, both state and federal policy favors arbitration and any
doubts about the scope of the agreement must be resolved in favor of arbitration. 
Id. at 753. However, we may not simply assume the parties agreed to arbitrate; the
burden is on the Relators to prove by “clear and unmistakable evidence” the
existence of a valid and enforceable contract to arbitrate. First Options v. Kaplan,
Inc., 514 U.S. 938, 944 (1995). 
          Policy Considerations
          It is only after the establishment of a valid and enforceable agreement to
arbitrate that state and federal policies favor arbitration become applicable. EEOC
v. Waffle House, Inc., 534 U.S. 279, 294 (2002); Fleetwood Enterpr., Inc. v.
Gaskamp, 280 F.3d 1069, 1074 (5th Cir. 2002). The purpose of the Federal
Arbitration Act is “to make arbitration agreements as enforceable as other
contracts, but not more so.” Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388
U.S. 395, 404 n.12 (1967); see also Mitsubishi Motors Corp. v. Soler Chrysler
Plymouth, 473 U.S. 614, 625-26 (1985); Waffle House , 534 U.S. at 294. 
          Accordingly, we must determine, as a matter of contract interpretation,
whether the Relators met their burden of proving the existence of a valid and
enforceable contract to arbitrate. Labor Ready Central III v. Gonzales, 64 SW.3d
519, 521-22 (Tex. App.—Corpus Christi 2001, no writ). Because the trial court
concluded that Relators did not meet their burden of proof, we must uphold that
court’s ruling unless the record conclusively requires a contrary result. See Pepe
Int’l Dev. Co. v. Garcia, 915 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.]
1996, no writ).
The Palm Harbor Agreement 
          The Relators rely upon the provisions of two documents (Palm Harbor No. 1
and No. 2) to support their contention that the Ripples entered into a valid and
enforceable agreement to arbitrate. Palm Harbor No. 1 is a one-page printed form
dated October 1, 1998. It bears a heading, including address and telephone
numbers, entitled “Palm Harbor Village.” It is signed by the Ripples, as
“Purchaser,” and by a representative of Palm Harbor Village, as “Retailer.” The
document recites that the parties to the “Retail Installment Contract or Cash Sales
Contract” agree that:
any and all controversies and claims arising out of or relating to said
contracts or to the negotiation, purchase, financing, installation,
ownership, occupancy, habitation, manufacture, warranties (express or
implied), repair, or sale/disposition of the “home” which is subject to
said contracts, will be settled solely by means of final and binding
arbitration before a three-judge panel of the American Arbitration
Association.
 
1. The arbitration provision will inure to the benefit of
the manufacturer of the home as fully as if the
manufacturer was a signatory to said contracts; 
 
2. The arbitration provision also will inure to the benefit
of any lender or mortgagee (or assigns) who provide
financing for the purchase of the home at the sole
discretion of that lender or mortgagee, and
 
3. Nothing in this contract requires a lender or mortgagee
to invoke this Arbitration Provision, and the lender or
mortgagee may do so only if they agree to final and
binding determination by the arbitration process.

         Palm Harbor No. 2 is also a one-page printed form headed “Palm Harbor
Village.” It is entitled “ARBITRATION AGREEMENT” and is signed by the
Ripples, as “purchaser.” Under a signature line designated for the retailer, “Palm
Harbor Village,” are the initials of some unidentified person. The document recites
that it is “executed contemporaneously with and as additional consideration for” an
installment or sales contract for the purchase of a manufactured home as described
in said contract. It also recites that the agreement is to inure to the benefit of the
“manufacturer of the Home and of the lender or mortgagee, if any, which provides
the financing for the purchase of the Home, their successors and assigns.” The
document then sets forth the “opt-out” provision in issue here, which states the
following:
The manufacturer, the lender, or mortgagee may elect not to initiate
and be bound by the arbitration by giving the notice; each, in its sole
discretion, may opt out of and elect not to be bound by the arbitration
by giving written notice of the election to all parties within twenty (20)
days after receipt of the Notice from another party. 
 
(Emphasis added.)
         Applicable Contract Law
         In deciding whether a valid agreement to arbitrate exists, under either the
Federal Arbitration Act or the Texas Arbitration Statute, we must apply applicable
state contract law. Labor Ready Central, 64 S.W.3d 519, 524 n.2; see also First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995); JM Davidson, Inc. v.
Webster, 49 S.W. 3d 507, 512 (Tex. App.—Corpus Christi 2001, pet. filed); Tenet
Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 387-88 (Tex. App.—Houston [14th
Dist.] 1998, pet. dism’d w.o.j.). Thus, we must look to the contract law of the
State of Texas to determine that issue in this case.
         Both documents before us involve the same parties and relate to the same
transaction; therefore, we will read their provisions together in ascertaining the
parties’ intent. Fort Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831,
840 (Tex. 2000); The Courage Co., L.G.C. v. The Chemshare Corp., 93 S.W.3d
323, 332-33 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Because the second
document does not specify whether and to what extent it is intended to operate in
discharge or substitution of the first document, we shall interpret the two
documents together, and in the event of any inconsistency between the two
documents, the provisions of the Palm Harbor Agreement, being the later of the
two, will prevail. Id. at 333-34.
 
         Mutuality of Obligations
         Under Texas law, a binding contract must be based on a valuable
consideration. The consideration need not always be in the form of identical
promises. For example, a contract may be based on one party’s agreement to pay a
sum of money in return for the other party’s promise to perform a certain task. In
such a circumstance, the first party’s payment constitutes an independent
consideration for the second party’s promissory obligation. See Johnson v. 
Breckenridge-Stephens Title Co., 257 S.W. 223, 225 (Tex. 1924) (citing, inter alia,
East Line Ry. Co. v. Scott, 10 S.W. 99 (Tex. 1888)). 
         However, if the parties have entered into a bilateral contract, where their
promises constitute the only consideration for the agreement, the contract is invalid
unless their mutual obligations are “mutual and binding.” Labor Ready Central v.
Gonzalez, 64 S.W.3d 519, 522-23 (Tex. App.—Corpus Christi 2001, no pet.); see
also Sterling Computer Sys. of Texas, Inc. v. Texas Pipe Bending Co., 507 S.W.2d
282, 282-83 (Tex. App.—Houston [14th Dist] 1974, writ ref’d) (bilateral contract
lacking mutuality of obligation is unenforceable). This well-established principle
of law is applicable to agreements to arbitrate as well as to other contracts. See In
re Tenet Healthcare, Ltd., 84 S.W.3d 760, 766 (Tex. App.—Houston [1st Dist.]
2002, no pet.) (mutual promises waiving right to litigate will constitute valid
consideration for agreement to arbitrate, provided neither party can unilaterally
rescind); see also Tenet Healthcare Ltd. v. Cooper, 960 S.W.2d 386, 388 (Tex.
App.—Houston [14th Dist.] 1997, pet. dism’d w.o.j.); In re Jebbia, 26 S.W.3d 753,
758 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); In re Alamo
Lumber Co., 23 S.W.3d 577, 579-80 (Tex. App.—San Antonio 2000, orig. 
proceeding); but see and compare In re Jobe Concrete Prods., Inc. v. Court of
Appeals of Tex., Eighth Dist., No. 08-02-00175-CV, 2003 WL 21757512 (Tex.
App.—El Paso Jul. 31, 2003, orig proceeding).
The Appellate Record
         Applying Texas contract law, we next must determine whether the trial court
abused its discretion in ruling that the “opt-out provision” in the Palm Harbor
Agreement rendered the agreement to arbitrate unenforceable for want of
consideration. In making this determination, we must review the documents in
light of the record before us and seek to determine whether there is any evidence of
an independent consideration being received by the Ripples in return for their
giving the opt-out right to the Manufacturer. In our review, we will consider only
the evidence and inferences therefrom that tend to support the trial court=s ruling,
and we must disregard all evidence and inferences to the contrary. Certain
Underwriters at Lloyd’s of London, 950 S.W.2d 375, 377 (Tex. App.—Tyler
1996), writ dism’d w.o.j., 988 S.W.2d 731 (Tex. 1998).
         The documents in the record before us consist of: (1) Relators’ verified
petition for mandamus, (2) the Ripples’ verified response, and (3) authenticated
copies of certain pleadings and exhibits attached to the Relators’ petition. The trial
court’s original order denying Relators’ motion to compel arbitration recites that
the court heard evidence on the motion, but the Relators deny that the court
conducted an evidentiary hearing. The Ripples do not specifically contradict the
Relators’ assertion that no evidence was heard by the court. The Ripples argue,
however, that inasmuch as the Relators failed to bring forward a complete record
of the proceedings, this Court must presume any omitted evidence supports the
trial court’s ruling. See Fort Bend County v. Texas Parks & Wildlife Com’n, 818
S.W.2d 898, 900 (Tex. App.—Austin 1991, no writ); Polanco v. Pan American
University,818 S.W. 2d 97, 99 (Tex. App.—Corpus Christi 1991, no writ).
         We need not decide whether this presumption applies here, because the
documents relied upon by Relators do not suggest, much less conclusively prove,
that the Ripples received an independent consideration for giving the opt-out right
to the Manufacturer. Based on our examination of the record, we conclude that the
trial court did not abuse its discretion in ruling Relators failed to meet their burden
of showing the Ripples received an independent consideration for giving the
unilateral right to rescind to the Manufacturer. Compare Emerald Texas, Inc. v.
Peel, 920 S.W.2d 398, 402 (Tex. App.—Houston [1st Dist.] 1996, no writ) (where
record affirmatively showed the existence of a valuable consideration moving to
the purchaser).
         The “Opt-Out” Provision and Mutuality
         Under Texas law, an “opt out” provision purporting to give one party the
unilateral right to avoid their contractual obligations renders the contract invalid
for want of mutuality. Sterling Computer, 507 S.W.2d at 282; In re Tenet
Healthcare, Ltd., 84 S.W.3d at 766; Labor Ready Central, 64 S.W.3d at 519;
compare Lawrence v. Comprehensive Bus. Servs. Co., 833 F.2d 1159, 1162, 1164
(5th Cir. 1987) (recognizing rule but holding provision did not render contract
invalid simply because it gave one party right to seek injunctive relief in certain
limited circumstances).
         In this case, the Palm Harbor opt out provision is absolute and unlimited. It
purports to give the Manufacturer, as a third-party beneficiary of the contract, the
unconditional right to unilaterally “opt out” of the agreement to arbitrate whenever
and for whatever reason (or for no reason) it might decide would be in its best
interest. Under Texas law, such an unlimited right to rescind a bilateral contract
renders the contract void for want of mutuality. See Sterling Computer, 507
S.W.2d at 282. Thus, we hold that the trial court did not abuse its discretion in
ruling that the opt-out provision in the Palm Harbor Agreement rendered that
agreement invalid and unenforceable.
Issues Relating to Unconscionability 
         We next review the record to determine whether the trial court clearly abused
its discretion in deciding that it would be unconscionable, under the circumstances
of the case, to compel the Ripples to arbitrate their claims against the Relators. In
making this determination, we must bear in mind that it was the Ripples’ burden to
prove their contention that the Palm Harbor Agreement was unconscionable under
the circumstances existing at the time of its execution. 9 U.S.C.A. 2; Doctor’s
Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (1996); In re Oakwood Mobile
Homes, 987 S.W.2d 571, 573 (Tex. 1999); Emerald Texas, 920 S.W2d at 398.
         We must also bear in mind that this Court is empowered to review the trial
court’s rulings on issues of both "procedural" and "substantive" unconscionability. 
In re Halliburton Co. and Brown & Root Energy Servs., 80 S.W.3d 566, 572 (Tex.
2002). Thus, in considering whether the trial court’s ruling may be upheld on the
basis of procedural unconscionability, we must ascertain whether the record
reflects such a disparity in the parties’ respective bargaining power that the trial
court could reasonably have decided that the Ripples, as the weaker party in the
transaction, had no reasonable opportunity to negotiate an alternative to the opt-out
provision. We must also seek to ascertain whether the trial court’s ruling may be
sustained on the basis of substantive unconscionability, i.e. whether the opt-out
provision in the Palm Harbor Agreement makes it so one-sided that it would be
unconscionable to enforce the agreement under the circumstances existing at the
time of its execution. In re First Merit Bank, 52 S.W.3d at 757 (citing Tex. Bus. 
& Com. Code Ann. ' 2.302 cmt. 1). 
         The Opt-Out Provision and Unconscionability
         We have not found any Texas case involving the issue of unconscionability
in which the court considered an opt-out provision containing language as broad
and unlimited as that contained in the Palm Harbor Agreement. The Texas
Supreme Court did consider a somewhat similar provision in an arbitration
agreement that allowed a lending bank the right to seek judicial relief for the
limited purpose of protecting its loan and security interest. In re First Merit Bank,
52 S.W.3d at 754. Because the agreement permitted the lending bank to seek
judicial relief only for a limited purpose and obligated the bank to arbitrate all
other claims, the Court determined that the agreement to arbitrate was not
unconscionable. Id. at 757. 
         We have found several decisions from courts in other states that have
addressed the issue of whether an unlimited opt-out provision, such as that
contained in the Palm Harbor Agreement, will render contract unconscionable. 
Arnold v. United Co. Lending Corp., 511 S.E.2d 854, 859 (W. Va. 1998)
(arbitration provision in consumer loan transaction waiving consumer’s right to
judicial redress but preserving the lender’s right, held unconscionable, void, and
unenforceable as matter of law); Iwen v. U.S. West Direct, 977 P.2d 989, 996
(Mont. 1999) (advertising contract drawn by telecommunications company, which
required advertiser, the weaker bargaining party, to submit all claims to arbitration
and gave company the right to seek judicial relief, held unconscionable because it
lacked mutuality of remedy and contained terms that were unreasonably favorable
to the drafter); Ramirez v. Circuit City Stores, 90 Cal. Rptr. 916, 920 (2000)
(holding employment contract provision requiring the weaker party [the employee]
to arbitrate claims, while allowing the stronger party [the employer] to seek redress
through the courts, is presumptively unconscionable). We find the rationale of
these decisions to be persuasive in deciding the issue at hand.
         In this case, the trial court could reasonably have inferred from all the
circumstances reflected in the record that the Ripples were at a commercial
disadvantage in their contractual negotiations with the Relators, and that, because
of the disparity in their bargaining power, the Ripples were not afforded any
meaningful opportunity to negotiate a fair and mutually binding opt-out provision. 
Thus, we conclude that the trial court acted within its judicial discretion in ruling
that it would be unconscionable, under the circumstances existing at the time of the
execution of the Palm Harbor Agreement, to compel the Ripples to arbitrate their
claims against the Relators. 
         Claim of Equitable Estoppel
         The Relators further assert that “if it is determined that the manufacturer is
somehow not compelled to arbitrate due to the ‘opt-out’ in the Second Arbitration
Agreement, the order compelling arbitration should still include the Manufacturer.” 
In support of this assertion, Relators suggest that the claims asserted by the Ripples
against the Manufacturer are “inherently inseparable” from the claims asserted
against the Retailer and are based on the “same operative facts.” Thus, the
Relators argue that even though the Manufacturer is not a signatory to the
arbitration agreement, the Ripples are equitably “estopped from seeking to avoid
arbitration.” In support of this contention, Relators cite In re Educ. Mgmt. Corp.,
14 S.W.3d 418, 424-25 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding);
Valero Energy Corp. v. Teco Pipeline Co., 2 S.W.3d 576 (Tex. App.—Houston
[14th Dist] 1999, no pet.); In re Koch Indus., Inc., 49 S.W.3d 439 (Tex. App.—San
Antonio 2001, orig. proceeding); In re Nasr, 50 S.W.3d 23 (Tex. App—Beaumont
2001, orig. proceeding); In re Rangel, 45 S.W.3d 783 (Tex. App.—Waco 2001,
orig. proceeding); In re MacGregor, No. 01-02-01246-CV, 2003 WL 21545141
(Tex. App.—Houston [1st Dist.] Jul. 10, 2003, orig. proceeding); Carlin v. 3V,
Inc., 928 S.W.2d 291 (Tex. App.—Houston [14th Dist.] 1996, no writ); and
Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524 (5th Cir. 2000).
         We do not find any of these cases to be applicable here. In each of those
cases there was a valid and enforceable agreement to arbitrate. In the instant case,
the trial court determined that the Palm Harbor Agreement is void for want of
consideration and unconscionable as to both Relators. As a designated third-party
beneficiary of that agreement, the Manufacturer stands in the shoes of the
contracting party and is subject to all the provisions of the contract. Nationwide of
Bryan, Inc. v. Dyer, 969 S.W.2d 518, 520 (Tex. App.—Austin 1998, no writ);
Stonewall Ins. Co. v. Modern Exploration, Inc., 757 S.W.2d 432, 434-35 (Tex.
App.—Dallas 1988, no writ). Such rights as the Manufacturer might have, as a
third-party beneficiary, to compel arbitration are entirely dependent upon the
existence of a valid and enforceable contract. The trial court has ruled that the
purported contract is invalid and unenforceable as to both Relators, and it did not
abuse its discretion in refusing to compel arbitration on Relator’s claim of
equitable estoppel.
 
 

         Relators’ Petition for Mandamus is denied.




                                                                                 Frank G. Evans



                                                                                 Justice

Panel consists of Justices Keyes, Hedges,


 and Evans.

Justice Hedges, dissenting.












.