In re EDUCATION MANAGEMENT CORPORATION, INC., The Art Institutes International, Inc. The Art Institute of Houston, Inc., Relators.

No. 14–99–01344–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 2, 2000.

Marie R. Yates, Murray Fogler, Randall W. Wilson, Houston, for relators.

Andres C. Pereira, Mike O'Brien, Malcolm Deon Dishongh, Houston, for respondents.

Panel consists of Justices YATES, FOWLER and EDELMAN.

## OPINION

LESLIE BROCK YATES, Justice.

Relators, Education Management Corp., Inc. (EMC), The Art Institutes Interna-

tional, Inc. (AII), and The Art Institute of Houston (AIH), filed this petition for writ of mandamus seeking to vacate the trial court's order denying their amended motion to compel arbitration under the Federal Arbitration Act (FAA). Relators complain the trial court abused its discretion by concluding that "interstate commerce is not involved in the [underlying] dispute." Because uncontroverted proof establishes that the parties' transaction affects interstate commerce, we conditionally grant the writ.

## BACKGROUND

The real parties in interest are 326 present and former students of AIH, which is a vocational school that offers a two-year degree in design, media arts, and culinary arts. The real parties filed suit in the 113th District Court of Harris County, alleging that AIH and its parent corporations, AII and EMC, through their advertising and marketing programs:

> ... made false claims and/or misrepresentations and/or omitted to tell the truth to [students] regarding, *inter alia*, the nature and quality of the credits they earn attending AIH, the nature and quality of instruction provided ... the quality and sufficiency of ... instructors, the job placement services provided ... and the nature and quality of the degree [students] can receive if they successfully complete a course of instruction at AIH.

The real parties also allege that relators failed to provide adequate equipment and facilities, and "reaped large monetary gains from their misleading conduct by aggressively assisting students obtain financial aid." The real parties seek damages for deceptive trade practices, breach of contract, negligence and fraud. Shortly after suit was filed, relators moved to compel arbitration under the Texas Arbitration Act (TAA) based on the following arbitration provision contained in identical enrollment agreements signed by the real parties:[1]

> Any dispute between the Student and Institute (other than those regarding grades or other academic evaluations) not resolved with Institute or regulatory officials shall be submitted to binding arbitration in the City of Houston, Texas pursuant to the rules of the American Arbitration Association. Any award entered shall be final and binding.

The real parties opposed the motion asserting that the TAA was inapplicable under the consumer exception in section 171.002(a)(2) of the Texas Civil Practice and Remedies Code.[2] Relators subsequently filed an amended motion to compel arbitration under the FAA, asserting that the enrollment agreements evidenced a transaction involving interstate commerce. This motion was supported by a brief and the affidavits of AIH's Director of Administrative and Financial Services, Sara Benson, AIH's Director of Admissions, Rick Simmons, and AIH's President, Steve Gregg. The real parties filed a response asserting, alternatively, that: (1) the dispute did not involve interstate commerce, (2) AII and EMC could not enforce the arbitration provision as non-signatories to the enrollment agreements, (3) relators were judicially estopped from asserting the applicability of the FAA, and (4) the arbitration agreements were procured by fraud. Attached to this response, were the

---

**1.** Relators acknowledge that sixty-eight of the real parties do not have the arbitration provision in their enrollment agreements and thus, are not required to arbitrate their claims.

**2.** Section 171.002(a)(2) states that "this chapter does not apply to ... an agreement for the acquisition by one or more individuals of property, services, money or credit in which the total consideration to be furnished by the individual is not more than 50,000, except as provided by Subsection (b)." TEX. CIV. PRAC. & REM.CODE ANN. § 171.002(a)(2) (Vernon Supp. 2000). Subsection (b) states that "an agreement described in Subsection (a)(2) is subject to this chapter if: (1) the parties to the agreement agree in writing to arbitrate; and (2) the agreement is signed by each party and the party's attorney." *Id.* at § 171.002(b).

**422**

affidavits of two former students, who testified they were unaware the enrollments agreements contained an arbitration provision. After a hearing, the trial court denied relators' amended motion to compel arbitration. Relators filed a motion and brief for reconsideration. Attached to this motion were supplemental affidavits of the same AIH officers identified above, as well as the affidavit of AIH's Director of Student Services, Lee Schnell. The real parties filed a response re-asserting that interstate commerce was not involved in the dispute. After a hearing, the trial court denied relator's motion for reconsideration, concluding that relators "failed to discharge their burden to show that interstate commerce is involved in the dispute."

Shortly after the trial court's ruling, the Texas Supreme Court decided *In re L & L Kempwood Associates.*, L.P, 9 S.W.3d 125 (1999) (per curiam). In *Kempwood*, the court held "that the provision of the FAA that makes enforceable a written arbitration provision in 'a contract evidencing commerce,' extends to any contract affecting commerce as far as the Commerce Clause of the United States Constitution will reach." *Id.* at 127 (citing *Allied–Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). Relators filed a post-hearing brief and letter re-urging their position in light of *Kempwood* and requesting that the court enter a new order that referenced that decision. The trial court subsequently entered an amended order denying relators' motion for rehearing on interstate commerce grounds and citing *Kempwood*. This mandamus followed.

## MANDAMUS

Generally, mandamus relief is available if the trial court violates a duty imposed by law or clearly abuses its discretion, either in resolving factual issues or in determining legal issues, when there is no adequate remedy at law. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992). Mandamus is appropriate when a state court erroneously denies a motion to compel arbitration under the federal scheme. *See In re Valero Energy Corp.*, 968 S.W.2d 916 (Tex.1998). Where, as here, the arbitration agreement is silent as to the application of the FAA or the TAA, the question of whether the transaction affects interstate commerce is one of fact. *See Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 696 (Tex.App.-Houston [14th Dist.] 1999, no pet.). To obtain mandamus relief with respect to the resolution of factual issues, the relator must establish that the trial court could reasonably have reached only one decision. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A reviewing court may not substitute its judgment for that of the trial court. *See id.* Thus, even if a reviewing court would have decided the issue differently, it cannot disturb the trial court's ruling unless that ruling is shown to be arbitrary and unreasonable. *See id.* Here, relators contend the trial court denied arbitration under the FAA in the face of uncontroverted proof establishing that the parties' transaction, as evidenced by the enrollment agreements, affected interstate commerce.

## INTERSTATE COMMERCE

Because federal law strongly favors arbitration, a presumption exists in favor of agreements to arbitrate under the FAA. *See Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996). However, a party seeking to compel arbitration must first establish its right to arbitrate under the FAA. *See Ikon*, 2 S.W.3d at 696; *see also Stewart Title Guar. Co. v. Mack*, 945 S.W.2d 330, 333 (Tex.App.-Houston [1st Dist.] 1997, dism'd w.o.j. [leave denied]). If it does, and the opposing party does not defeat that right, the trial court is obliged to compel arbitration. *See id.* The FAA "applies to all suits in state and federal court when the dispute concerns 'a contract evidencing a transaction involving commerce.'" *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266 269–70 (Tex.1992) (citing 9 U.S.C. § 2). As we noted, this

provision of the FAA extends to any contract affecting commerce. *See L & L Kempwood,* 9 S.W.3d at 127; *see also Palm Harbor Homes, Inc. v. McCoy,* 944 S.W.2d 716, 719 (Tex.App.-Fort Worth 1997, orig. proceeding). "Whether the parties contemplated that their transaction would substantially affect interstate commerce is irrelevant; if the transaction affects interstate commerce 'in fact,' the arbitration provision is governed by the FAA." *Palm Harbor,* 944 S.W.2d at 719 (citing *Allied–Bruce,* 513 U.S. at 281, 115 S.Ct. 834). In the underlying case, the transaction evidenced by the enrollment agreements is the purchase and provision of educational services. By signing the agreements, the real parties agreed to pay tuition and fees according to a particular payment schedule and refund policy and relators agreed to provide certain educational services. Accordingly, the issue in this mandamus proceeding is whether the parties' transaction, as evidenced by the enrollment agreements, in fact affects interstate commerce.

In this regard, relators presented uncontroverted proof that (1) 235 AIH students paid their tuition from proceeds of Title IV federal funding, which for each student, were processed out-of-state and involved substantial interstate activity, including communications by telephone, mail, and fax, (2) most of AIH's equipment is purchased out-of state, (3) AIH's career service representatives spend a portion of their time communicating with prospective employers outside of Texas, regularly use the Internet to locate prospective employers around the country, and attend out-of-state job fairs, trade shows and trade conventions, (4) AIH recruits students from out-of state through representatives traveling to high schools and conventions out-of-state, from advertisements in regional publications, and from direct mailings, and (5) AIH's accreditation is through out-of-state agencies.

■ The real parties respond that the transaction does not affect interstate commerce because the enrollment agreements, by their terms, are governed by Texas law. Specifically, the agreements require prospective students to take the Texas Academic Skills test, note "the consumer's right to cancel under Texas' fair trade practices rule," state that AIH is licensed by the Texas Workforce Commission, and provide that arbitration is in Houston, Texas. These references to Texas law are not choice of law provisions. Even if they were, the *Kempwood* court held that a choice of law provision that does not specifically exclude the application of federal law, cannot be read to have such an effect. *See Kempwood,* 9 S.W.3d at 127–28. None of the provisions cited by the real parties specifically exclude the application of federal law.

■ Nevertheless, pointing out that AIH is the only relator who is a signatory to the enrollment agreements, the real parties contend the underlying dispute is purely a local one because (1) AIH is located and headquartered in Houston, (2) students, including the real parties, live in Houston, (3) AIH bills students from Houston, and (4) the educational services are performed in Houston. According to the real parties, the fact that student loans are processed out-of-state or that equipment is purchased out-of-state is irrelevant because the underlying dispute is based only on "the substandard quality of the education AIH provided to them, and ... the misrepresentations used to induce their enrollment." The issue is not whether the parties' *dispute* affects interstate commerce, but whether their dispute concerns a *transaction* that affects interstate commerce. *See Jack B. Anglin,* 842 S.W.2d at 272 (emphasis added).

The enrollment agreements specifically address payment of tuition and fees, the type of degree that students can earn, the transferability of credits to other institutions, and the availability of employment assistance and instructional equipment. By suing on these provisions of the enrollment agreements, the real parties cannot

ignore the interstate character of the transaction between the parties as evidenced by those agreements. The FAA does not require a substantial effect on interstate commerce; rather, it requires only that commerce be involved or affected. *See Kempwood*, 9 S.W.3d at 126.[3] Thus, if some, but not all, aspects of a transaction affect interstate commerce, the FAA applies. *See e.g., Palm Harbor*, 944 S.W.2d at 720 (purchase of mobile home manufactured and delivered in Texas affected interstate commerce where mobile home included components purchased or manufactured in other states and countries and where Florida manufacturer operated facilities in other states and was bonded by New York insurance company); *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 356 (Tex.App.-Houston [1st Dist.] 1995, no writ) (contract to build chemical plant in Texas affected interstate commerce where significant components of project were produced in other states, where interstate mails and telephone calls were used in the management of the project, and where contractor was insured by company located outside of Texas and hired out-of-state subcontractors who were also insured by companies located outside of Texas); *Lost Creek Mun. Util. Dist. v. Travis Indus. Painters, Inc.*, 827 S.W.2d 103, 105 (Tex.App.-Austin 1992, writ denied) (contract to paint interior of water reservoir in Texas affected interstate commerce where paint and epoxy used for project were manufactured out-of-state and where surety on contractor's performance bond was headquartered out-of state).

As we observed, several pertinent aspects of the parties' transaction affect interstate commerce. Students, including most of the real parties, paid their tuition from financial aid processed out-of-state, AIH purchased most of its equipment out-of-state, AIH directed its advertising and marketing programs out-of-state, AIH extended its job placement services out-of-state, and AIH's accreditation was through out-of-state agencies. Because the real parties do not controvert relators' proof of interstate commerce, the trial court was obliged to compel arbitration under the FAA, absent any defenses to arbitration.

## NONSIGNATORIES

As previously described, the real parties in interest assert several defenses to arbitration. They first contend that even if their transaction affects interstate commerce, the trial court cannot compel AII and EMC to arbitration because (1) AII and EMC are nonsignatories to the enrollment agreements, and (2) the arbitration provision in the agreements limits arbitration to a "dispute between the student and the Institute." The allegations in the real parties' petition are directed against relators, collectively. In their post-hearing brief to the trial court, the real parties acknowledge that "the claims against the two out-of-state defendants, [AII] and [EMC] are based only on an 'alter ego' claim and raise no independent basis for liability." This court recently held that a party may be estopped from avoiding arbitration of claims against non-

**3.** Relying on *U.S. v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the real parties argued in the trial court that a transaction must "substantially affect" interstate commerce. In *Lopez*, the U.S. Supreme Court held that "a federal statute making it a crime to possess a firearm in a school zone was outside Congress's power to regulate commerce when the statute 'neither regulate[d] commercial activity nor contain[ed] a requirement that the possession be connected in any way to interstate commerce.'" *Kemp-*

*wood*, 9 S.W.3d at 127 (quoting *Lopez*, 514 U.S. at 551, 115 S.Ct. 1624). In *Kempwood*, the Texas Supreme Court held that *Lopez* did not restrict the scope of the FAA as construed in *Allied–Bruce*. *See Kempwood*, 9 S.W.3d at 127. In *Allied–Bruce*, decided three months before *Lopez*, the U.S. Supreme Court held that the language "involving commerce" in section 2 of the FAA means "affecting commerce" and thus, signaled Congress's intent to exercise its commerce power to the fullest extent. *See Allied–Bruce*, 513 U.S. at 277, 115 S.Ct. 834.

signatories if those claims and the claims against the signatory are based on the same operative facts and are inherently inseparable. *See Valero Energy Corp. v. Teco Pipeline Co.,* 2 S.W.3d 576, 592–93 (Tex.App.-Houston [14th Dist.] 1999, pet. filed). Because the underlying dispute involves alter ego claims against AII and EMC that are based on the same operative facts, and inherently inseparable from the arbitrable claims against AIH, the real parties cannot avoid arbitration against AII and EMC.

### JUDICIAL ESTOPPEL

■■■ The real parties next contend that relators' prior motion to compel arbitration under the TAA bars relators from seeking arbitration under the FAA based on the doctrine of judicial estoppel. The doctrine of judicial estoppel bars a party who has successfully maintained a position in a prior judicial proceeding from later adopting an inconsistent position, unless he can show the prior statement was made inadvertently due to mistake, fraud, or duress. *See Vinson & Elkins v. Moran,* 946 S.W.2d 381, 397 (Tex.App.-Houston [14th Dist.] 1997, writ dism'd by agr.). Relators' request for arbitration under the TAA is not inconsistent with their subsequent request for arbitration under the FAA. The TAA and FAA merely provide alternative procedural vehicles for relief. *See e.g., Jack B. Anglin,* 842 S.W.2d at 272 (noting that "litigants who allege entitlement to relief under the Federal Act, and *in the alternative,* under the Texas Act are burdened with the need to pursue parallel proceedings") (emphasis added); *see also e.g., Tuco, Inc. v. Burlington Northern R.R. Co.,* 912 S.W.2d 311, 314 (Tex.App.-Amarillo 1995), *aff'd as modified,* 960 S.W.2d 629 (Tex.1997) (noting that FAA creates a federal body of law of arbitrability). Because judicial estoppel does not apply to alternative positions taken in the same proceeding, it is inapplicable here. *See Vinson & Elkins,* 946 S.W.2d at 397. Furthermore, even if it could be said that relators asserted a contradictory position

in their initial motion to compel arbitration, that motion was superseded by the amended motion to compel and thus, cannot form the basis for applying the doctrine of judicial estoppel. *See* TEX.R. CIV. P. 62, 65.

### FRAUD IN THE INDUCEMENT

■■■ Finally, the real parties contend that "the agreements to arbitrate in the enrollment agreements were procured by fraud." As we previously noted, the real parties' response to the amended motion to compel arbitration included the affidavits of two students. These students stated that they were unaware of the arbitration provision when they signed the enrollment agreement, and that they would not have signed the agreement if they knew they were waiving their right to a jury trial. According to these students, they signed the enrollment agreements after meeting with school representatives and based on representations that the agreements covered matters discussed in the meeting. The students averred that school representatives never mentioned or discussed the arbitration provision with them. Relators contend that because these claims go to the making of the entire agreement, not the arbitration provision, they should be resolved by the arbitrator. We agree.

■■■ Fraud in the inducement of an arbitration provision is a matter for the trial court whereas fraud in the inducement of an entire agreement is a matter for the arbitrator. *See Pepe Int'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 930 (Tex.App.-Houston [1st Dist.] 1996, no writ); *see also Babcock & Wilcox Co. v. PMAC, Ltd.,* 863 S.W.2d 225, 231 n. 3 (Tex.App.-Houston [14th Dist.] 1993, writ denied). In *Shearson Lehman Brothers, Inc. v. Kilgore,* 871 S.W.2d 925, 927 (Tex. App.-Corpus Christi 1994, orig. proceeding), a stock brokerage firm filed a plea in abatement seeking arbitration of claims brought by a client for alleged mishandling of the client's account. The client opposed

arbitration arguing the arbitration clause in the brokerage agreement was procured by fraud. *See id.* Specifically, the client asserted that he did not read the contract and that he was unaware of the arbitration provision when he signed the contract based on representations that it contained only matters that had been previously discussed between the firm and the client. *See id.* The trial court denied the plea in abatement and the brokerage firm sought mandamus relief. *See id.* Finding that the client's fraud claim was directed at the entire brokerage contract rather then at the arbitration clause, the appellate court granted mandamus relief. *See id.* at 928. The court stated:

> Fraud is not sufficiently focused upon the arbitration agreement when a party merely fails to read the contract which contains an arbitration clause of which he is unaware. Even though that party may have been induced to sign the contract without reading it by someone with whom he has had prior agreements or oral understandings that did not include an arbitration agreement, if there have been no negotiations or representations concerning arbitration, any fraudulent inducement is considered to be directed at the signing of the contract generally and not at the arbitration clause within that contract.

*See id.*

Here, any claim by the real parties that they were induced into signing the enrollment agreements without discussion or negotiation of arbitration, concerns fraud as to the whole agreement and is a matter for arbitration. The real parties' fraud in the inducement claim therefore does not preclude arbitration.

## CONCLUSION

In the face of uncontroverted proof that the parties' transaction affects interstate commerce, and in the absence of any meritorious defense to arbitration, we hold that the trial court could reasonably have reached only one conclusion: to compel arbitration under the FAA. The trial court therefore committed a clear abuse of discretion in denying relators' amended motion to compel arbitration. Accordingly, we conditionally grant the writ of mandamus and direct the trial court to vacate its order denying relators' amended motion to compel arbitration and to enter the appropriate order. The writ will issue only if the court does not comply.