Appellees= Motion for Rehearing is Overruled; Majority and Concurring
Opinions filed January 9, 2007 Withdrawn; Petition for Writ of Mandamus Denied;
Reversed and Remanded and Substitute Opinion filed May 10, 2007








 

Appellees= Motion for Rehearing is
Overruled; Majority and Concurring Opinions filed January 9, 2007 Withdrawn;
Petition for Writ of Mandamus Denied; Reversed and Remanded and Substitute
Opinion filed May 10, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00604-CV

____________

 

TMI, INC., d/b/a TRENDMAKER HOMES, Appellant

 

V.

 

JOHN A. BROOKS, KIMBERLY M. BROOKS,
MIKLYN M. PROVENZANO, ASTON B. GRIFFITHS, BERNICE M. GRIFFITHS, DANIEL L.
WOODARD, CINDA J. WOODARD, CARSTEN ALSGUTH, SHERI L. ALSGUTH, TIMOTHY S. HART
AND MARIAN HART, TANNER GARTH, TERRI GARTH, RAOUL LEBLANC, DEBBIE LEBLANC,
GEORGE SAFI, JILL SAFI, JERRY THOMAS, and NANCY THOMAS, Appellees

 



 

On Appeal from the 280th
District Court

Harris County, Texas

Trial Court Cause No. 2003-69920

 



 

NO. 14-05-00878-CV

IN RE TMI, INC., d/b/a TRENDMAKER HOMES, Relator

 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS










 

S U B S T I T U T E   O P I N I O N

We withdraw our opinions issued January 9, 2007, issue the
following opinion in their place, and overrule appellees= motion for
rehearing.

This is a consolidated interlocutory appeal and petition
for writ of mandamus challenging the trial court=s May 13, 2005
order denying a motion to compel arbitration filed by appellant, homebuilder
TMI, Inc., d/b/a Trendmaker Homes (ATrendmaker@).  See Tex. Civ. Prac. & Rem. Code Ann. _ 171.098(a)
(Vernon 2005); 9 U.S.C. _ 16.  The lawsuit arose when appellees, nineteen
homeowners in the Woodwind Lakes subdivision of Houston, learned their
homesites were developed on or around property where there had been prior oil
and gas activity.  Alleging their homesites had been environmentally
contaminated, the homeowners sued Trendmaker and other entities for failing to
disclose the former presence of oil and gas operations on the property.[1] 
Trendmaker moved to compel arbitration pursuant to an arbitration provision in
the purchase agreements signed by the homeowners.  Concluding the arbitration
provision was procedurally and substantively unconscionable, the trial court
denied Trendmaker=s motion.








In five points of error, Trendmaker asserts the trial court
erred in (1) Adrawing all factual inferences against arbitrability
and ignoring normal presumptions and public policy@ favoring
arbitration; (2) finding the arbitration clause in the purchase agreements was
procedurally unconscionable; (3) finding the arbitration clause was
substantively unconscionable; (4) considering claims of fraudulent inducement
rather than submitting them to an arbitrator; and (5) Acreating a new
standard for enforceability of arbitration agreements that would essentially
require discovery to be taken in connection with a motion to compel
arbitration.@  Because we determine the homeowners= claims fall
within the scope of the arbitration agreement and they have not established
their unconscionability defense, we reverse the trial court=s May 13, 2005
order.  We remand this case for further proceedings consistent with this
opinion.

Factual and Procedural Background

Trendmaker is in the business of building and selling
homes.  The appellees, John A. Brooks, Kimberly M. Brooks, Miklyn M.
Provenzano, Aston B. Griffiths, Bernice M. Griffiths, Daniel L. Woodard, Cinda
J. Woodard, Carsten Alsguth, Sheri L. Alsguth, Timothy S. Hart and Marian Hart,
Tanner Garth, Terri Garth, Raoul LeBlanc, Debbie LeBlanc, George Safi, Jill
Safi, Jerry Thomas, and Nancy Thomas (collectively, the Ahomeowners@), purchased new
homes in Woodwind Lakes from Trendmaker.  Each appellee or set of husband/wife
homeowners signed an agreement (the Apurchase agreement@) with Trendmaker
for the construction of a new house, ranging in value from $170,000 to
$220,000.  The purchase agreement contained the following arbitration
provision:

All claims, disputes and other matters in question between Seller and
Purchaser arising out of or relating to this agreement or to any alleged
defects relating to the Property including, but not limited to, any claims
brought under the Texas Deceptive Trade Practices Act or the Residential
Construction Liability Act, shall be decided by arbitration in accordance with
the Construction Industry Arbitration Rules of the American Arbitration
Association promulgated by the American Arbitration Association, as in effect
[on] the date of any demand for arbitration hereunder, except that at Seller=s sole option, it shall have all
defenses based upon the applicable statute of limitations determined by a court
of law or at any arbitrator=s preliminary hearing.  The foregoing agreement to arbitrate shall be
enforceable under the prevailing Texas arbitration law.  The award rendered by
the arbitrator shall be final and binding upon the parties.

 

The words Adefect@ and AProperty@ are not defined
in the purchase agreement. 








After purchasing
their homes, the homeowners discovered part of the property comprising Woodwind
Lakes had been the former site of oil and gas operations.  Until the 1970s,
ChevronTexaco and Amerada Hess Corporation conducted oil and gas exploration
and processing on the property.  These operations involved a gas compression
station, storage tanks, spill containment facilities, and disposal pits for oil
and products derived from oil and natural gas.  When the oil and gas operations
concluded, the property was sold.  Ultimately, Woodwind Lakes Partners #3,
Ltd., purchased the property to develop it as a housing subdivision.  

During the
development process, Lakeland Development Company (ALakeland@), the project
manager, discovered portions of the property were contaminated from the oil and
gas operations.  Lakeland began moving the contaminated soil to the platted
recreational areas for remediation.  Over time, some of the soil was apparently
moved back into the residential lots.  The homeowners became aware of the
potential contamination at various times in 2003, when defendant ChevronTexaco
issued letters to some of the homeowners requesting permission to conduct
research concerning the environmental conditions in the neighborhood and on
individual lots.  Such testing revealed the presence of mercury, benzene, and
other contaminants on individual lots and in common areas. 








Various groups of
homeowners brought suits against the developer, the builder, and the petroleum
companies.[2] 
In the case at bar, homeowners Brooks, Provenzano, Griffiths, Woodard, Alsguth,
and Hart[3]
(the Aoriginal
plaintiffs@) brought suit against Trendmaker in the 234th
District Court, alleging negligence, various forms of fraud, violations of the
Deceptive Trade Practices Act, negligent misrepresentation, nuisance, and civil
conspiracy, and seeking damages of more than one million dollars per home.[4]

Trendmaker
answered, alleging inter alia, that the plaintiffs were barred
from bringing the action because they had agreed to binding arbitration
provisions in the purchase agreements for the homes.  Trendmaker then filed a
motion to compel arbitration, and on June 28, 2004, Judge Bruce D. Oakley
granted the motion, ordering arbitration proceedings Aconsistent with
the terms and conditions of the Purchase Agreements . . . or as otherwise
agreed upon by the parties.@  Homeowners Garth, LeBlanc, Safi, and
Thomas intervened, and Trendmaker filed motions to compel arbitration as to the
intervenors.           

Subsequently, the
original plaintiffs filed a motion to reconsider the order compelling
arbitration.  On November 8, 2004, after a hearing, Judge Oakley stated that he
was Ainclin[ed] to deny
the motion for reconsideration and to grant the motion for arbitration,@ but no written
order appears in the record.  The parties agree Judge Oakley retired from the
bench without ruling on the motion to reconsider.  Judge Oakley=s successor was
recused, and the case was assigned to Judge Tony Lindsay of the 280th District
Court.

On May 13, 2005,
after hearing argument from both parties, Judge Lindsay found that, although
the scope of the arbitration clause covered the claims that form the basis of
this suit, the clause was both procedurally and substantively unconscionable. 
Judge Lindsay (1) granted the homeowners= motion to
reconsider the prior order compelling arbitration and withdrew the order
compelling arbitration as to the original plaintiffs, (2) denied Trendmaker=s motion to compel
arbitration, (3) stayed discovery and pretrial matters pending this appeal, and
(4) allowed the homeowners to file motions to sever.  Seeking relief from this
order, Trendmaker filed this interlocutory appeal and petition for writ of
mandamus. 

Discussion

A.      Standard of Review








The parties agree
the Texas General Arbitration Act (the ATGAA@) governs this
dispute.[5] 
When an arbitration provision is governed by the TGAA, interlocutory appeal is
the appropriate mechanism to challenge a denial of arbitration.[6] 
Tex. Civ. Prac. & Rem. Code Ann.
_ 171.098(a)(1)
(Vernon 2005); see Am. Med. Techs., Inc. v. Miller, 149 S.W.3d
265, 269 (Tex. App.CHouston [14th Dist.] 2004, no pet.). 
Thus, we review the trial court=s order via the interlocutory appeal and
deny the petition for writ of mandamus.  








When reviewing by
interlocutory appeal an order denying arbitration under the TGAA, we apply a de
novo standard to legal determinations and a Ano evidence@ standard to
factual determinations.  Dewey v. Wegner, 138 S.W.3d 591, 597 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  Under the Ano evidence@ standard, we view
the evidence in the light most favorable to the challenged finding and indulge
every reasonable inference that would support it.  See City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We must credit favorable evidence
and disregard contrary evidence only if a reasonable factfinder could do so.  Id.

B.      Scope of the Arbitration Provision

Under the TGAA, a
party seeking to compel arbitration must establish (1) the existence of a
valid, enforceable arbitration agreement and (2) that the claims asserted fall
within the scope of that agreement.  Valero Energy Corp. v. Teco Pipeline
Co., 2 S.W.3d 576, 581 (Tex. App.CHouston [14th
Dist.] 1999, no pet.).  Because state and federal policies favor arbitration, a
presumption exists favoring agreements to arbitrate, and courts must resolve
any doubts about an arbitration agreement=s scope in favor
of arbitration.  Cf. In re First Merit Bank, N.A., 52 S.W.3d 749, 753
(Tex. 2001) (discussing arbitration under the FAA).  








Here, the trial
court determined the arbitration provision encompassed the homeowners= claims.  We
agree.  By its terms, the provision applies to A[a]ll claims,
disputes and other matters in question between Seller and Purchaser arising out
of or relating to this agreement or to any alleged defects relating to the
Property.@  Although the word AProperty@ is not
specifically defined in the purchase agreement, the agreement states the
purchaser is buying Athe following parcel of land,
including all improvements as provided herein.@  (Emphasis
added).  There is no language in the purchase agreement implying the term AProperty@ is limited to the
improvements.[7] 
Moreover, any doubts regarding the scope of the arbitration provision must be
resolved in favor of arbitration.  Id.  Thus, the trial court properly
determined Trendmaker met its burden to establish (1) the existence of an
arbitration agreement and (2) that the claims asserted by the homeowners fall
within the scope of the agreement.  We must thus consider whether the
homeowners established their unconscionability defense.

C.      Unconscionability

 A party may
revoke an arbitration agreement only on a ground that exists at law or in
equity for the revocation of a contract.  Tex.
Civ. Prac. & Rem. Code Ann. ' 171.001 (Vernon
2005).  Unconscionability is a defense to an arbitration agreement. See id.
_ 171.022; In re
FirstMerit Bank, 52 S.W.3d at 756.  Because the law favors arbitration, the
party opposing arbitration bears the burden to prove unconscionability.  See
In re FirstMerit Bank, 52 S.W.3d at 756.  The test for unconscionability is
Awhether, given the
parties= general
commercial background and the commercial needs of the particular trade or case,
the clause involved is so one-sided that it is unconscionable under the
circumstances existing when the parties made the contract.@  Id. at
757 (emphasis added).  Unconscionability includes: (1) procedural
unconscionability, which refers to the circumstances surrounding the adoption
of the arbitration provision; and (2) substantive unconscionability, which
refers to the fairness of the arbitration provision itself.  In re
Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002).  Courts may
consider both procedural and substantive unconscionability when evaluating the
validity of an arbitration provision.  Id. at 572.  Because the trial
court found the arbitration clause at issue here both procedurally and substantively
unconscionable, we consider both issues in turn. 

1.       Procedural Unconscionability








Trendmaker
challenges the trial court=s determination the arbitration provision
is procedurally unconscionable in its second and fourth issues.  In these
issues, Trendmaker asserts the homeowners= claims of
fraudulent inducement[8]
(1) attacked the purchase agreement in its entirety and thus should have been
submitted to the arbitrator and (2)  were unjustified as a matter of law. 
Procedural unconscionability relates to the actual making or inducement of the
contract.  In re Rangel, 45 S.W.3d 783, 786 (Tex. App.CWaco 2001, orig.
proceeding).  This aspect of unconscionability focuses on the facts surrounding
the bargaining process.  Id.  The party contesting the arbitration
provision bears the burden to show unconscionability in how the parties arrived
at their bargain.  See id.  Claims of procedural unconscionability are
reserved for judicial review and are considered on a case-by-case basis.  Id.

As to Trendmaker=s contention that
the homeowners= claim of fradulent inducement attacked the purchase
agreement in its entirety, arbitration provisions are generally Aseparable@ from the
contracts in which they are contained.  Prima Paint Corp. v. Flood &
Conklin Mfg. Co., 388 U.S. 395, 402-04 (1967); Am. Med. Techs. Inc.,
149 S.W.3d at 272.  Thus, when a party=s claim of
fraudulent inducement is directed at the contract as a whole, rather than at
the arbitration claim itself, the issue must be determined by an arbitrator.  Am.
Med. Techs., Inc., 149 S.W.3d at 272 (citing Prima Paint, 388 U.S.
at 403-04).  Conversely, when a party=s claim of
fraudulent inducement is directed at the arbitration provision itself, the
court decides the dispute.  Id.  Accordingly, defenses, such as
unconsionability, concerning the contract as a whole must be referred to an
arbitrator; defenses to the arbitration provision itself are considered by the
court.  Id.  Here, the homeowners assert that, had Trendmaker disclosed
the environmental contamination in the area, they would not have signed the
purchase agreements at all; however, the homeowners also specifically and
repeatedly assert they would not have agreed to the arbitration provision
itself had they known it encompassed any disputes beyond structural defects in
their houses, which they believed were covered by the warranty program.  Thus,
we construe the homeowners= challenges as directed to their agreement
to the arbitration provision itself, a matter determined by the court. 
Accordingly, we overrule Trendmaker=s fourth issue,
and consider whether the homeowners established their agreement to the
arbitration provision was fraudulently induced.








Absent fraud, a
party to a contract may not successfully claim he believed the provisions of a
contract were different from those plainly set out in the contract or he did
not understand the language used.  In re Media Arts Group, 116 S.W.3d
900, 908 (Tex. App.CHouston [14th Dist.] 2003, orig.
proceeding).  As is relevant here, fraud consists of a material
misrepresentation that was knowingly or recklessly made with the intent that
the other party act upon it, and the other party=s actual and
justifiable reliance on the misrepresentation caused injury.  See Ernst
& Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex.
2001). 

To support their
claims of fraudulent inducement and procedural unconscionability, the
homeowners submitted  their own affidavits.  Each homeowner=s affidavit
contained language substantially similar to the following (quoted from
homeowner Brooks= affidavit):[9]


It was my understanding that Paragraph 20, entitled
Arbitration/Limitation on Claims, set forth in the Purchase Agreement that we
were required to sign, was intended to relate to defects in the construction of
our house.  Trendmaker made this representation to me in the Purchase Agreement
and other materials provided to me by Trendmaker.  In particular, Trendmaker
represented to me that arbitration would apply to defects in the construction
of the home which would be covered by the Warranty Plus Program.








At no time, was it ever explained
to me that paragraph 20 would apply to anything else besides construction
defects.  To the extent that Trendmaker now takes a different position, I believe
they are wrong and they materially misrepresented the meaning or intent of
arbitration.  I would never have signed the arbitration agreement or the
Purchase Agreement, if Trendmaker [had] told me the arbitration clause meant to
apply to anything else besides construction defects for which we were protected
or covered by the Warranty Plus Program.          

(emphasis added). 
Initially, the homeowners assert that, through the verbiage in the arbitration
provision and Aother materials,@ Trendmaker or its
Aagent@ misrepresented
the scope of the agreement.  Specifically, each appellee attests it was his or
her understanding from reading the arbitration provision and the undisclosed Aother materials@ that the
arbitration provision was limited to construction defects in the home.

The evidentiary
standards for a motion to compel arbitration are the same as for a  motion for
summary judgment.  In re Jebbia, 26 S.W.3d 753, 756-57 (Tex. App.CHouston [14th
Dist.] 2000, orig. proceeding).  Thus, it follows that affidavits of an
interested witness, such as each of the homeowners here, submitted in
opposition to a motion to compel arbitration must be clear, positive, direct,
otherwise credible, free from contradictions and inconsistencies, and readily
controvertible.  Cf. Tex. R. Civ.
P. 166a(c) (summary judgment evidentiary standards); Trico Techs.
Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997) (same).  AReadily
controvertible@ means the testimony could have been effectively
countered by opposing evidence.  Cf. Trico Techs. Corp., 949 S.W.2d at
310.  Self-serving statements in affidavits of interested witnesses concerning
their state of mind are uncontrovertible because the mental workings of an
individual=s mind are matters about which adversaries have no
knowledge or ready means of confirming or controverting.  Cf. Lechtion v.
Dyll, 65 S.W.3d 696, 701 (Tex. App.CDallas 2001, pet.
denied).  Moreover, an interested witness=s affidavit
reciting the affiant Abelieves@ certain things
will not defeat a motion to compel arbitration as such language does not
positively and unqualifiedly represent that the Afacts@ disclosed are
true.  Cf. Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996).








In its numerous
filings with the trial court on the issue of the enforceability of the
arbitration clause, Trendmaker repeatedly objected that the homeowners= affidavits,
stating their understanding of the arbitration clause, offered no evidence that
Trendmaker made any misrepresentations regarding the arbitration clause. We
agree. The homeowners= affidavits attesting to their
understanding of the scope of the arbitration clause and their belief
Trendmaker=s interpretation of that arbitration clause is wrong
constitute no evidence as they (1) are not readily controvertible, (2) are not
based on the affiants= personal knowledge, and (3) do not
unqualifiedly represent that the alleged Afacts@ are true.[10]
Cf. Ryland Group, Inc., 924 S.W.2d at 122; Lechtion, 65 S.W.3d at
701.  Because a lot of no evidence is still no evidence, the trial court erred
in invalidating the arbitration provision based on the conclusory allegations
of fraud found in these affidavits.  See Nissan Motor Co. Ltd. v. Armstrong,
145 S.W.3d 131, 148 (Tex. 2004),  In re Media Arts Group, 116 S.W.3d at
908B10.

Moreover, as
Trendmaker correctly points out, one of the elements of a fraud claim is that
the plaintiff actually and justifiably relied on the misrepresentation.  DRC
Parts & Accessories, L.L.C. v. VM Motori, S.P.A., 112 S.W.3d 854, 858
(Tex. App.CHouston [14th Dist.] 2003, pet. denied) (en banc). In
this regard, a party to an arm=s length transaction, such as each of the
homeowners, must exercise reasonable diligence for the protection of his or her
own interests, and a failure to do so is not excused by mere confidence in the
honesty and integrity of the other party.  Id.  Therefore, reliance upon
an oral representation that is directly contradicted by the express,
unambiguous terms of a written agreement between the parties is not justified
as a matter of law.  Id. 

As discussed
above, nothing in the arbitration provision itself indicates that it is limited
to construction defects, as the homeowners claim they believed it was. 
Moreover, the purchase agreement contains a merger clause, explicitly stating
that Trendmaker is not bound by any

statement, promise, condition or
stipulation not specifically set forth in this Agreement. . . . no sales
consultant, employee, or agent of [Trendmaker] has authority to modify the
terms of this Agreement or make any representation of agreement not contained
in this Agreement, and anything to the contrary shall not be binding upon
[Trendmaker].








 

Finally, the
agreement states: 

PURCHASER ACKNOWLEDGES AND
REPRESENTS THAT PURCHASER HAS READ AND UNDERSTANDS THIS AGREEMENT, AND ALL
ATTACHMENTS, AND THAT PURCHASER HAS NOT RECEIVED ANY REPRESENTATIONS AND IS NOT
RELYING ON ANY STATEMENT, PROMISE, CONDITION OR STIPULATION NOT SPECIFICALLY
SET FORTH IN THIS AGREEMENT OR THE ATTACHMENTS. 

 

The homeowners= affidavits
indicate they were relying on statements, promises, conditions or stipulations
not set forth in the purchase agreement,[11]
in direct conflict with the express language of the agreement.  Thus, they
constitute no evidence of justifiable reliance, an essential element of their
affirmative defense.  As the homeowners produced no evidence supporting all the
elements of their affirmative defense to arbitration, the trial court abused
its discretion in concluding the arbitration clause was procedurally
unconscionable and denying Trendmaker=s motion to compel
arbitration on this basis. See Valero, 2 S.W.3d at 581.  We sustain
Trendmaker=s second issue.

2.       Substantive Unconscionability

In its third
issue, Trendmaker asserts that the trial court abused its discretion in
determining that the arbitration clause was substantively unconscionable based
on the homeowners= contention it would force them to incur excessive
costs in arbitrating their claims, resulting in an undue financial hardship. 
Under certain circumstances, arbitration can be so cost-prohibitive it
effectively precludes a litigant from exercising his statutory right to seek
redress.  In re FirstMerit Bank, N.A., 52 S.W.3d at 756 (citing Green
Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90, 121 S. Ct. 513, 522 (2000)). 
In such a case, the arbitration agreement may be invalidated.  Id. 
However, the party opposing arbitration must prove the likelihood of incurring
such substantial costs through Asome specific
information.@  See id. (quoting Green Tree Fin. Corp.,
531 U.S. at 92, 121 S. Ct. at 522B23).








In support of their claims, the homeowners
provided affidavit evidence by an expert, Raymond Kerr, an attorney and
construction and commercial arbitration panelist with the American Arbitration
Association (the AAAA@).  Kerr attested
that, based on his experience, Athe AAA would require a three-arbitrator
panel.@  He further
estimated that arbitration could cost up to $115,200, plus AAA administrative
fees.  In addition, homeowner Garth, an attorney with construction arbitration
experience, attached a copy of an AAA fee schedule to his affidavit.  He
attested that AAAA arbitors charge thousands of dollars even before
hearings commence@ and estimated arbitration costs Ain the range of
$45,000 to $120,000.@  The original plaintiffs each also submitted affidavits
summarizing the fees and expenses they expected to incur through arbitrating
this matter and indicating that Athe costs and expenses of AAA
arbitration are not economically feasible.@  The intervenors likewise submitted
affidavits stating they could not afford to pay anywhere near the experts= estimated arbitration costs of
$45,000 to $120,000 without Aundue hardship.@  Finally, the homeowners cite
several cases holding that specific evidence regarding the potentially exorbitant
costs of arbitration may render an arbitration agreement substantively
unconscionable.[12]  













Importantly, all the homeowners= specific evidence regarding
arbitration costs rely on estimates of costs and fees of arbitration conducted
by the AAA.[13]  However,
while there is some indication in our record that Trendmaker may prefer arbitration
through the AAA, the arbitration provision at issue in this case does not require
that the AAA determine this dispute.  Instead, the clause states disputes Ashall be decided
by arbitration in accordance with the Construction Industry Arbitration
Rules of the American Arbitration Association promulgated by the American
Arbitration Association@  (emphasis added).  Such language may
authorize the AAA to administer the arbitration,[14]
but it does not mandate arbitration by the American Arbitration
Association.[15] 
Indeed, Trendmaker provided affidavit evidence that a dispute involving other
homeowners in the same subdivision, bringing similar claims under the same
purchase agreement containing the same arbitration provision as we have here
was resolved through arbitration by an independent arbitrator at a
significantly lower cost than the AAA costs attested to by the homeowners= experts.[16] 
Because less expensive alternate methods of resolving this dispute are
available, we need not consider whether the appellees= affidavits
regarding the cost of arbitration by AAA arbitrators will be incurred for purposes
of determining the substantive unconscionability of the arbitration clause. 

In sum, the
homeowners have identified no evidence or legal authority that this dispute
must be arbitrated through the AAA or that they will actually be charged the
fees they have identified.  Cf. In re FirstMerit Bank, 52 S.W.3d at 757
(concluding there was legally insufficient evidence the plaintiffs would be
denied access to arbitration based on excessive costs largely due to a lack of
evidence the AAA would  actually conduct the arbitration).  Moreover, if the
parties are unable to agree on an arbitrator or if the agreed method fails or
cannot be followed, the TGAA authorizes the trial court to appoint an
arbitrator.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 171.041(b)(1), (2) (Vernon 2005). Under
these circumstances, the trial court erred in finding this arbitration
provision substantively unconscionable.  Thus, we sustain Trendmaker=s third point of error.


Conclusion

Having sustained
Trendmaker=s second and third points of error, we need not
address the remaining issues.  Because Trendmaker proved the existence of an
arbitration agreement encompassing the claims at issue and the homeowners
failed to prove their unconscionability defense, we hold the trial court erred
in denying Trendmaker=s motion to compel arbitration of the
homeowners= claims.

Accordingly, we reverse the trial
court=s May 13, 2005 order and remand
this case for further proceedings consistent with this opinion. Because we find
there exists an adequate remedy by appeal, Trendmaker=s petition for writ of mandamus is
denied.

 

 

 

/s/      John S. Anderson

Justice

 

 

Petition for Writ of Mandamus
Denied; Reversed and Remanded and Substitute Opinion filed May 10, 2007.

Panel consists of Chief Justice
Hedges and Justices Yates and Anderson.









[1]  The plaintiffs sued Woodwind Lakes Partnership #3
Ltd., Woodwind Lakes Partnership, Lakeland Development Company, Mapani, Inc.,
Kentner P. Shell, Chicago Title Insurance Company, Centennial Homes, Inc.,
d/b/a Trendmaker Homes, TMI, Inc., Windham Holdings, L.P., 422S, Limited
Liability Company, Aderus Company, Mapani Homes, Actington Company, and
Actington of Texas Corporation (collectively, the Adeveloper defendants@) and Chevron USA, Inc. d/b/a ChevronTexaco Corporation and Amerada
Hess Corporation (collectively, the Apetroleum
defendants@).  The additional defendants are not material to
Trendmaker=s motion to compel arbitration or this appeal.  The
The homeowners will litigate their claims against the additional defendants in
the trial courtstatus of these additional defendants and plaintiffs= suit against them is not found in the appellate
record.





[2]  Prior to this suit, another group of homeowners
litigated the arbitrability of substantially the same contamination issues,
pursuant to the same purchase agreement with Trendmaker, in cause No.
2002-55598, Bernie Milligan, Hank Williams, and Brian and Donna Kibler v.
Centennial Homes, Inc., d/b/a Trendmaker Homes, in the 281st District Court
of Harris County (the AMilligan case@). 
The parties consisted of five claimants who purchased three homes from
Trendmaker.  The Milligan case was referred to arbitration.





[3]  We refer to husband and wife claimants collectively
by last name.





[4]  This damages estimate is based on a statement by the
homeowners= counsel at the May 13, 2005 hearing and from
Trendmaker=s reply brief in this court; the homeowners did not
allege a specific damages amount in their petitions.





[5]  See Tex.
Civ. Prac. & Rem. Code Ann. ''
171.001 - .098 (Vernon 2005).  The parties agreed by signing the purchase
agreements containing the arbitration agreement that such agreement to
arbitrate Ashall be enforceable under the prevailing Texas
arbitration law.@





[6]  In contrast, when an arbitration provision is
governed by the Federal Arbitration Act (the AFAA@), a petition for writ of mandamus is the proper
mechanism to challenge a denial of arbitration. See In re Halliburton Co.,
80 S.W.3d 566, 567 (Tex. 2002); Am. Med. Techs., Inc. v. Miller, 149
S.W.3d 265, 269 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  Trendmaker has alternatively filed a petition for writ
of mandamus in the event the FAA is held to be the governing statute.          

When the FAA applies to a specific
contract, it preempts the TGAA and governs the agreement unless the parties
specifically excluded its application in the contract.  Am. Med. Techs.,
Inc., 149 S.W.3d at 269.  Here, the arbitration provision in the purchase
agreement does not exclude application of the FAA.  However, the FAA applies to
all suits in state or federal court when the dispute concerns a Acontract evidencing a transaction involving commerce.@  Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266,
269B70 & n.6 (Tex. 1992) (citing Perry v. Thomas,
482 U.S. 483, 489, 107 S. Ct. 2520, 2525 (1987));  Am. Med. Techs., Inc.,
149 S.W.3d at 269. A contract evidences interstate commerce if it affects
interstate commerce.  Am. Med. Techs., Inc., 149 S.W.3d at 269; In re
Educ. Mgmt. Corp., 14 S.W.3d 418, 423B24
(Tex. App.CHouston [14th Dist.] 2000, orig. proceeding).  When,
as here, an agreement is silent as to whether the FAA applies, the question of
whether the transaction affects interstate commerce is one of fact.  See In
re Educ. Mgmt. Corp., 14 S.W.3d at 422. 

Interstate commerce is evidenced by, inter
alia, location of headquarters in another state, manufacture of components
in a different state, transportation of goods across state lines, and billings
prepared in another state.  Stewart Title Guar. Co. v. Mack, 945 S.W.2d
330, 333 (Tex. App.CHouston [1st Dist.] 1997, writ dism=d w.o.j.).  Here, it is undisputed Trendmaker is a
Texas corporation selling real property located within Texas via purchase
agreements executed solely in Texas.  The only evidence Trendmaker offers that purports to show a transaction in
interstate commerce are two earnest money checks drawn on out-of-state banks by
homeowners LeBlanc and Woodard.  This isolated factor is insufficient to
constitute interstate commerce and invoke the FAA.  See Jack B. Anglin Co.,
842 S.W.2d at 270 & n.6.  





[7]  The arbitration provision at issue here is broad
form in nature, evidencing the parties=
intent to be inclusive rather than exclusive.  See Pepe Int=l Dev. Co. v. Pub Brewing Co., 915 S.W.2d 925, 928, 930 (Tex. App.CHouston [1st Dist.] 1996, no writ) (construing
arbitration clause containing language providing Aany controversy or claim arising out of and/or related to this
contract, or to the breach thereof, shall be settled by binding arbitration@ as broad form in nature).  





[8]  We recognize fraudulent inducement is generally a
separate defense from unconscionability.  See In re FirstMerit Bank, 52
S.W.3d at 756-58.  However, the parties have incorporated fraudulent inducement
into the discussion of the unconscionability defense.  See Universal
Computer Consulting Holdings, Inc. v. Hillcrest Ford Lincoln-Mercury, Inc.,
Nos. 14-04-00819-CV, 14-04-01103-CV, 2005 WL 2149508, at *2 n.6 (Tex. App.CHouston [14th Dist.] Sept. 8, 2005, no pet.) (not
designated for publication).





[9]  There is some slight variation among the affidavits
filed by the homeowners.  For example, several of the homeowners= affidavits state Trendmaker=s Aagent@ represented to them that arbitration applied only to
construction defects.  They also contain statements to the effect that, had
they known Trendmaker would attempt to compel arbitration in a case such as
this, involving fraud and nondisclosure of environmental issues, they would
never have agreed to the arbitration provision.  Additionally, homeowner Garth,
an attorney with extensive experience in construction defect cases, including
several involving similar arbitration clauses,  further states in one of his
affidavits, AUpon inquiry, Trendmaker=s agent specifically represented to me that the arbitration  clause
would only apply to claims for defects in the construction of the home which
would be covered by the Warranty Plus Program.@  Ultimately, however, none of these variations in the language of the
affidavits affect our disposition of this issue.





[10]  Additionally, other than a statement in Garth=s affidavit, there was no evidence
from the other homeowners that they asked any questions or requested any
explanations of the arbitration provision. See In re Rangel, 45 S.W.3d
at 787 (noting that the lack of questions or requests for explanations of a
contract supported the trial court=s finding that there was no showing of procedural
unconscionability).  





[11]  Nor have the homeowners provided any attachments to
the purchase agreement supporting their claims.





[12]  See, e.g., Olshan Found. Repair Co.
v. Ayala, 180 S.W.3d 212, 214 -16, & n.4 (Tex. App.CSan Antonio 2005, pet. denied) (determining that the
trial court properly denied arbitration where a family conclusively established
(1) they had filed a claim with the AAA , (2) the AAA had determined that three
structural engineers would conduct the arbitration, and (3) the AAA had
provided the m with an invoice in the amount of $33,150, which was over
twenty-five percent of the family=s
annual gross income, as their portion of the arbitration expenses, in addition
to a $4,130 filing fee); In re Luna, 175 S.W.3d 315, 328 (Tex. App.CHouston [1st Dist.] 2004, orig. proceeding [mand.
pending]) (finding the trial court abused its discretion by compelling
arbitration between an employer and employee largely due to the high costs of
arbitration, amounting to more than one-half the employee=s annual compensation, imposed on the employee and
the limitations on his remedies under the arbitration agreement, which rendered
the agreement Aso one-sided in [the employer=s] favor and so oppressive to [the employee] as to be
substantively unconscionable, given the strong legislative policy behind the
Worker=s Compensation Act@). 
In contrast, the homeowners here have not initiated arbitration with any
arbitrator at all, the arbitration provision does not limit the homeowners= remedies or provide for any fee splitting
arrangement, the homeowners have not presented any specific evidence regarding
their inability to afford arbitration other than conclusory statements in their
affidavits that they cannot afford the experts= estimated AAA costs and fees, and this case presents no public
policies countervailing the fact that Texas law strongly favors arbitration.  





[13]  Moreover, the AAA construction arbitration rules in
effect here provide that the AAA may reduce or defer administrative fees in the
event of extreme hardship on any party. See Am.
Arbitration Ass=n, Constr. Indus. Arbitration  Rules &
Mediation,  R‑50: 
Administrative Fees (eff. Sept. 15, 2005), available at http://www.adr.org/sp.asp?id=22004#R50; cf. FirstMerit Bank, 52 S.W.3d at 757 (noting
that one of the factors militating against the party seeking to avoid
arbitration by showing excessive fees charged by the AAA was the AAA=s commercial arbitration rule regarding deferral or
reduction of fees in the event of extreme hardship).





[14]  See Am. Arbitration Ass=n, Constr.
Indus. Arbitration  Rules & Mediation,  R‑2:  AAA and Delegation of Duties (eff.
Sept. 15, 2005), available at http://www.adr.org/sp.asp?id=22004#R2; see
also Ambulance Billings Sys. Inc. v. Gemini Ambulance Servs. Inc., 103
S.W.3d 507, 515 (Tex. App.CSan Antonio 2003, no pet.) (noting that a trial court did not abuse its
discretion by ordering arbitration by the AAA when similar language was
included in the arbitration provision).  





[15]  Likewise, an agreement authorizing the purchase of
Gucci loafers does not prevent the parties from deciding to buy cheaper shoes. 
In fact, evidence of the high relative cost of Gucci shoes may create a bias in
favor of less expensive footwear.  





[16]  Moreover, as discussed above, the initial court
order compelling arbitration (that was later withdrawn after various plaintiffs
were added and a motion to reconsider was filed) prescribed arbitration proceedings
Aconsistent with the terms and conditions of the
Purchase Agreements . . . or as otherwise agreed upon by the parties.@  (Emphasis added).